State *v.* Maney.

<hr />

THE STATE *vs.* JOHN MANEY.

New Haven Co., June T., 1886. PARK, C. J., CARPENTER, PARDEE, LOOMIS and GRANGER, Js.

It is a general rule that the testimony of an accomplice ought to be corroborated as to some fact tending to connect the prisoner with the offense; but the testimony of an accomplice may be so strong and convincing as to justify a verdict of guilty without corroboration.

The testimony of an accomplice had been corroborated as to important facts connecting the prisoner with the offense. Held that evidence was admissible corroborating his testimony as to minor facts not connecting the prisoner with the offense, his credibility as to his entire testimony being a matter for the jury to determine.

The judge in his charge to the jury said:—The testimony of the accomplice comes to you under such circumstances as to call for the most careful scrutiny. As a general rule it is unsafe to convict upon such testimony alone. It ought to be corroborated in material facts connecting the prisoner with the crime; but the degree of credit to be given to his testimony and the amount of corroboration necessary to render it satisfactory, are matters to be considered and determined by the jury. They have the right upon his naked testimony to find a verdict of guilty, but ought never to do so unless such evidence is so clear, strong and convincing that it removes every reasonable doubt

from their minds. But taking this to be the rule, the state claims that there is no occasion for its application in the present case, because the witness has been corroborated as to material facts. The judge then called their attention to the corroboration claimed. Held that the fair import of the whole charge was, that if the jury, after making due allowance for the suspicious circumstances under which the testimony was given, were fully convinced of the prisoner's guilt, they might return a verdict of guilty; that the charge made it clear to them that the testimony of the accomplice was not to be weighed in the same scales with that of an ordinary witness; and that, if the charge taken by itself was open to question, yet as there was confirming evidence sufficient for the jury to find that there was corroboration as to material facts, the jury could not have been misled by it.

[Argued June 1st—decided September 11th, 1886.]

INFORMATION for the burning of a barn; in the Superior Court in New Haven County. Tried to the jury on the plea of not guilty, before *Andrews, J.*

The barn was the property of Francis H. Shaw, and the burning was charged to have taken place at Meriden on the evening of Sunday, April 26th, 1885. Sundry witnesses were introduced on the part of the state who testified as follows:—

*Matthew Frawley* testified:—I reside in Meriden. I am twenty-seven years old. On Sunday, the 26th day of April last, I was at the house of John Maney nearly all day. Maney keeps a saloon. That day I was not in his saloon. We staid in his sitting room. I was there drinking with Maney and with others who came there for drinks. I drank that day several times. At about six o'clock in the afternoon Maney said to me, "Mat., come here, I want to see you!" We went down cellar. He then said, "Mat., will you go over and set Shaw's barn afire to-night?" He says, "If you will go over and do it you shall never want for a dollar so long as I have got it." Then he took a half pint bottle full of whisky and gave it to me. He got a pint bottle and partly filled it with kerosene oil and gave that to me. He drew the kerosene from a barrel. He had to tip up the barrel to get the oil to run. I guess the barrel was nearly empty. He put the bottle right under the faucet and drew it in that way. He could fill the bottle only about

half full. I took both these bottles. He pulled out a quarter from his pocket and said, " That is all I have got now; you can get a drink with that in the morning. You will find a window to the barn under the wagon shed with a light of glass broken out. You can pour the kerosene in there and light it and then run away." He took the bottles from a shelf in the corner of the cellar. There was a lot of other bottles of the same kind on the shelf. I then went to my own house. Leach was with me at my house. Leach and I drank the half pint of whisky, the whole of it. At about half past seven o'clock I went over to Shaw's barn. I found the window there broken just as he said. I got up, put my hand in, pushed back the spring, raised the window and got into the barn. I lighted a match to see the way. I went up the stairs to the hay mow. I set the hay on fire. I went back the same way, got out of the window and ran away. I did not use the oil. As I was running away I threw the bottle of oil away, back of Breckenridge's barn. I had not taken the cork out of it. (The State's Attorney produced a flat-shaped pint bottle or flask of glass, tightly corked and partly filled with kerosene oil.) I think that is the bottle I had. It looks like it. I think it is the one. That is the one Maney gave me.

On cross-examination the witness described the cellar of Maney with great particularity, and said that he had never been in it at any other time than the one in question. He also stated that he was arrested for this offense on the 8th day of May, and that at the office of the chief of police in Meriden he told the story of his connection with the burning of the barn substantially as he had told it in court, and that he then told about throwing away the bottle of oil back of Breckenridge's barn.

Other witnesses testified to the fact that the barn of Mr. Shaw was burned on the 26th day of April, 1885, at about 8 o'clock in the evening. It also appeared that another barn belonging to Mr. Shaw and standing on the same ground had been burned a few months earlier.

*R. M. Ford* testified:—I am chief of police in Meriden.

On the 8th day of May last I assisted in a search of Maney's cellar for liquor. We found several packages of liquor there which were seized. There was a barrel of kerosene there. I turned the faucet and found it was kerosene. I held my hand under the faucet and then put it to my tongue. I could not tell whether it was a full barrel or not. I did not put my hand on the barrel. I think it was a blue barrel. I am not certain. There was a shelf there in the corner of the cellar on which there was quite a number of empty bottles—pint and half pint bottles—like the one here (pointing to the bottle identified by Frawley.)

This witness also described Maney's cellar and the description was substantially the same as that given by Frawley.

*Wm. N. McNamara* testified:—I reside in Boston. I am a private detective. I was employed by the chief of police in Meriden to investigate the burning of Shaw's barn. I made inquiries. I visited Maney's place several times. I represented to him that I had escaped from the police in Boston. We had a good many talks together. He said he used to do a good business at his place till the Shaws testified against him and got his license revoked. I told him I thought that was pretty hard. He said he was getting his revenge out of them. And he asked me what I thought of the job? I asked him to tell me all about it. He said it was Shaw's barn. He said, "I hate that man like hell, and I am going to have my revenge out of him if it costs me my life." I then told him I did not know as I blamed him, they had been so hard on him. He said, "I didn't have to do it myself; I have not put my hand out myself." Frawley was sitting in the room not far away. Maney said in a low tone, pointing to Frawley, "Mat. here is the boy that does the job. He is a good boy and did the job well, and I paid him for it. He shall never want for anything as long as I live." At another time Maney said to me he would give $1,000 to burn up Shaw's house and him with it. His exact words were, "To burn him and his house to hell." A night or two afterwards I was there. I said to him, "You

have got square with them now, haven't you?" He said, "No, the burning the barn is only just the beginning; you wait and see what is coming." I communicated to the chief of police from day to day what I learned. There was a detective by the name of Sullivan who was with me two or three of the last visits I made and he heard some of Maney's talk.

This witness testified to other conversations with Maney of the same general character as those above recited.

*John T. Sullivan* testified:—I live in Hartford. I was employed as a detective in this case. The witness testified to hearing the words used by Maney that "Mat. here is the boy that does the job," etc., as stated by the witness McNamara.

*Edwin Puffer* testified:—I am a policeman in Meriden. I heard the story of Frawley at the police office after he was arrested on the 8th day of May last. I heard him tell about throwing away the bottle of kerosene oil behind Mr. Breckenridge's barn. I went to the place the same day, and found the bottle which has been shown here in court. That is the bottle (pointing to the one which had been identified by Frawley). That is the mark I put on it.

*Mrs. Bridget Maney*, wife of the accused, was called as a witness in his behalf, and on cross-examination testified:— There was a barrel of oil in the cellar. On Saturday, the 25th of April, I drew out from it to fill my lamp. I drew all I could get. I did not tip up the barrel.

*Katey Maney*, daughter of the accused, on cross-examination testified:—On Sunday, the same day that Shaw's barn was burned, along in the afternoon, a man came to our house to get some kerosene oil. He wanted a quart. I went down cellar to get it. I could get none from the barrel. It did not run. I did not tip up the barrel.

To the production of the bottle of oil, and its identification by Frawley, and to the testimony of the witness Puffer that he found the bottle at the place indicated by Frawley, and the testimony of the chief of police, the defendant objected, but the court admitted it.

The defendant offered testimony tending to show that a full barrel of kerosene oil was put into Maney's cellar on the 2d day of May which was tapped on the 4th day of May, and claimed that that was the barrel of oil which Mr. Ford found there.

Upon this part of the case the court charged the jury as follows : Frawley was the active agent in this crime, and his story comes to you under such circumstances as to call for the most careful scrutiny. In the argument a good deal of stress has been laid upon what is claimed to be a rule of law,—that the story of an accomplice ought to be received with great care, and that undoubtedly is the rule. Our Supreme Court quite a number of years ago laid down this rule in language better than I can give it myself, and in order that you may have it exactly I will read it to you. *State* v. *Wolcott*, 21 Conn. R., 275–281. In order to enable you to find a verdict against the prisoner it is necessary that the public prosecutor produce before you evidence to satisfy your minds beyond any reasonable doubt that they are guilty of the offense charged against them. (In this case there were two prisoners). An accomplice is an admissible witness, but as he comes before the court under suspicious circumstances, his testimony ought to be received with great caution. As a general rule, it will be unsafe to convict upon the testimony of an accomplice alone, uncorroborated by other testimony. It ought to be corroborated in material facts connecting the prisoners and each of them with the crime ; but the degree of credit to be given to the testimony of an accomplice, and the amount of corroboration necessary to render it satisfactory, are matters to be considered and determined by the jury. Much will depend upon his manner of testifying, his manner of answering the interrogatories put to him, and the consistency of his story with the facts proved by other witnesses." This was the charge of the court to the jury that tried the case. The Supreme Court in passing upon this language, say this:— " The testimony of an accomplice is admissible, and of course, to some extent, is presumed to be credible. The

law would not admit proof which it had decided, *a priori*, should not be believed when admitted. If credible at all it may be sufficiently so to produce belief and conviction, and this is not unfreque' tly the fact. The degree of credit which is due to an accomplice is exclusively for the jury to say. The courts frequently do, and ought to, advise caution in reposing confidence in the naked testimony of an accomplice; but this is rather in the exercise of a proper judicial discretion than because the law demands it. What will amount to a corroboration has been a matter of some discussion in the books. Any evidence, aside from the testimony of the accomplice himself or connected with it, which appears reasonable, not merely that the crime charged has been committed, but that the accused participated in it, may satisfy the mind. And frequently facts of no great prominence will be sufficient to do this." Now if I should attempt to make a rule out of this language of the Supreme Court it would be something like this: That the jury may hear the testimony of an accomplice, and that upon the naked testimony of an accomplice they have the right to find a verdict of guilty, but that they ought never to do so unless they find such evidence to be so clear, strong and convincing that it removes from their minds every reasonable doubt of the guilt of the accused. Now, taking that to be the rule, the state say there is no occasion for its application in this case, because they say that Frawley is corroborated. And first they say he is corroborated by the circumstances which he relates and which are found to be true by the testimony of other witnesses; that he described the cellar correctly, its character and size, the shelf with the bottles on it, with the size, shape, and kind of the bottles, the contents of the cellar, the kerosene barrel, its color, position, and the fact that it was almost empty; and they say he is further corroborated by Maney's threats to do injury to Shaw, as well as by certain correspondences in the testimony itself, apart from the testimony of the detective, and that he is fully and clearly corroborated by both the detectives. The theory of the state is that Frawley set fire

to this barn, being instigated to do so by the prisoner. I have already said to you that the case must be proved in both these respects beyond a reasonable doubt, and that it is your duty to return a verdict of not guilty unless you are persuaded beyond all reasonable doubt that the prisoner did do the thing which this claim imputes to him. As to what constitutes a reasonable doubt, you will understand that it is not a fanciful doubt, not a mere possibility or uncertainty, but that it is a doubt for which a reasonable man can see some grounds. If you entertain any such doubt as that, you ought not to convict the prisoner. If on the other hand you have no such doubt, you should render a verdict of guilty.

The jury returned a verdict of guilty, and the defendant appealed to this court. The following reasons of appeal were assigned :—

1. The court erred in admitting the testimony of the policeman Puffer as to the finding of the bottle of kerosene, and in permitting the production and identification of the bottle of kerosene before the jury.

2. The court erred in charging the jury as follows : "Well now, if I should attempt to make a rule out of this language of the Supreme Court, it would be something like this : That the jury may hear the testimony of an accomplice and they may find a verdict upon it, that is, upon the naked testimony of an accomplice, but that you ought not to do it unless you find such evidence so clear, strong, and convincing as that it removes from your mind all reasonable doubt as to the guilt of the accused."

*W. C. Case* and *W. H. Ely*, with whom was *E. A. Merriman*, for the appellant.

1. Corroborative testimony, to be admissible, must first show, or tend to show, that crime has been committed, and must connect, or tend to connect, the accused with the crime, and identify the person accused independently of the story of the accomplice. It is not admissible merely because it shows, or tends to show, that the man who committed

the offense and tries to make the defendant the responsible party in the commission of the offense, knows how the deed was done, and truly tells what he did at the time he committed and while committing the crime. If it only tends to show that the so-called accomplice gives a true account of his own acts and conduct, it is not admissible against the accused. In Rex v. Addis, 6 Car. & Payne, 388, the court in laying down the rule in regard to the admissibility of evidence to corroborate an accomplice, says: " The corroboration of an accomplice ought to be as to some fact or facts, the truth or falsehood of which goes to prove or disprove the offense charged against the prisoner." In Regina v. Farler, 8 Car. & Payne, 106, Lord ABINGER, C. B., in summing up, said: " Corroboration ought to consist in some circumstance that affects the identity of the party accused. A man who has been guilty of a crime himself will always be able to relate the facts of the case, and if the confirmation be only on the truth of that history, without identifying the person, that is really no corroboration at all. If a man was to break open a house and put a knife to your throat, and steal your property, it would be no corroboration that he stated all the facts correctly, that he had described how the person did put a knife to the throat and did steal the property. It would not at all tend to show that the party accused participated in it." See also Rex v. Wilkes, 7 Car. & Payne, 272. The same rule is recognized in this country, and the decisions of the greatest weight sustain our claim. In Commonwealth v. Bosworth, 22 Pick., 397, MORTON, J., in delivering the opinion of the court, said: " We think the rule is that the corroborative evidence must relate to some portion of the testimony which is material to the issue. To prove that an accomplice had told the truth in relation to irrelevant and immaterial matters, which were known to everybody, would have no tendency to confirm his testimony involving the guilt of the party on trial." See also Commonwealth v. Holmes, 127 Mass., 424; Marler v. The State, 68 Ala., 580; Watson v. Commonwealth, 95 Penn. St., 424; State v. Graff, 47 Iowa, 384; Welden v. The

*State*, 10 Texas App., 400; Best on Evidence, § 171; 1 Greenl. on Ev., § 381.  We have then the rule that the corroboration must be by proof of some fact tending to connect the defendant with the commission of the offense, independently of the testimony of the accomplice, and the test is to throw out all other evidence and see whether the evidence introduced tended to show that the defendant was connected with the offense.  Applying this test, we find that the evidence objected to was clearly inadmissible. Taken by itself, it shows that on the 8th day of May, twelve days after the fire, a bottle with kerosene oil was found in a certain place, and that place too far from the fire to show that the bottle had any connection with it.  There are no distinguishing marks on the bottle to show that it came from Maney, any more than there is to show that it came from any other liquor seller in Meriden or any other place. It is just as strong evidence against any liquor seller in Meriden, or any man who ever bought a pint of liquor or had a pint of kerosene oil, as it is against Maney.  Further, taken by itself there is nothing to show that the bottle had anything to do with the fire, or how it came to the place where it was found.  The most that it can possibly show is that some person had a pint bottle and some oil; that some person put the oil in the bottle, but whether the man who owned the bottle also owned the oil or not it does not show, and it shows further that some one put the bottle with the oil in a place far removed from the scene of the crime; and that is all it does show.  And so long as it shows that, and that only, it cannot be admitted to corroborate Frawley or for any other purpose.  And the evidence of Puffer that he found it where Frawley said he threw a bottle, only shows that Frawley gave a correct history of the crime, and this does not connect Maney with the crime any more than it does anyone else.  *Rex* v. *Wilkes*, 7 Car. & P., 272; *Regina* v. *Farler*, 8 id., 106.  It is no answer for the state to say that the jury might convict on the uncorroborated testimony of the accomplice, for if the evidence was introduced for the purpose of corroborating

Frawley in spite of the objection of the defendant, and was not properly admissible, the defendant is entitled to a new trial. "Although a jury may convict on the uncorroborated testimony of an accomplice, yet the admission, against the defendant's objection, for the purpose of corroborating the testimony of an accomplice, of evidence which does not connect the defendant with the crime," is a ground for a new trial. *Commonwealth* v. *Holmes*, 127 Mass., 424. It is no answer to the defendant's claim for a new trial to say that there is strong proof against him without this, for no one can tell what convinced the mind of the jury of the guilt of the accused. The bottle of kerosene and Puffer's story may have had more weight with them than any other part of the case. Certainly no one can say that it did not, and as this is a criminal case, and there has been error in the ruling of the court below, the defendant is entitled to a new trial. The jury must be convinced, beyond a reasonable doubt, by legally admissible evidence, that the accused is guilty of the offense charged, and so long as there is mingled with admissible evidence some that is inadmissible, no one can say that the jury were convinced by the evidence properly admitted, and did not take into consideration the evidence improperly admitted. In criminal cases courts do not refuse new trials because there is, in their minds, sufficient evidence to convict without the evidence improperly admitted, but give the accused a new trial if evidence has been improperly admitted, and leave the weight of the testimony properly admitted to be passed upon and determined by the jury. *Commonwealth* v. *Bosworth*, 22 Pick., 397; *Hughes* v. *The State*, 58 Miss., 355; *Rosenwerg* v. *The People*, 63 Barb., 637, 640; *State* v. *Allen*, 1 Hawks, 6; *State* v. *Merrill*, 2 Dev., 278; *Coleman* v. *The People*, 58 N. York, 555, 561.

2. Was the charge of the court a proper charge? The law most favorable to the state, while admitting that the jury may convict on the testimony of an accomplice alone, always couples with the admission the declaration that the accomplice's evidence ought to be corroborated, and holds

that it is better to acquit than convict a man against whom the testimony of an accomplice only is introduced, no matter how clear that testimony is. So universally is this declaration made in the opinions of this state and others, while admitting the right of the jury to so convict, that it has become practically a qualification of the rule, and shows that the law does not look upon the testimony of an accomplice with the same degree of favor that it does on other evidence. But the charge of the court puts such testimony on a par with other kinds, and says, merely, if you are convinced beyond a reasonable doubt, by the testimony of an accomplice, of the defendant's guilt, that is sufficient, stating exactly the same rule that applies to all kinds of evidence, and containing no caution, no advice, and showing no distinction between testimony of an accomplice and other testimony. It certainly cannot be true that the law gives the same weight to the testimony of an accomplice that it does to that of a perfectly free, unbiased person, one of unimpeachable and unquestionable character and reputation, and yet the same rule which was laid down by the court in this case would obtain in the case of a man of the highest integrity and character. No matter how good a man's character might be, his story would have to be so clear, strong, and convincing, that it would remove from the minds of the jury every reasonable doubt of the guilt of the accused, and to lay down a rule for the guidance of the jury which puts the testimony of an accomplice on a level with that of a man of unspotted reputation and character, must be contrary to law, and must necessarily mislead the jury in regard to the amount of faith to be put in the story of a man confessedly guilty of the crime for which he seeks to make another man responsible. " Courts ought to advise caution in reposing confidence in the naked testimony of an accomplice." *State* v. *Wolcott*, 21 Conn., 281. The court below did not advise caution, but without hinting that any caution was necessary the court laid down a rule which applies to all kinds of testimony, when the law requires that in addition to the universal rule there should be, in cases

where an accomplice testifies, a caution in such language as to show that an accomplice when giving his testimony is not on a par with men of unblemished character.

*T. E. Doolittle*, State's Attorney, *contra*, cited *State* v. *Wolcott*, 21 Conn., 280; *State* v. *Stebbins*, 29 id., 472; *State* v. *Williamson*, 42 id., 265; *People* v. *Guidici*, 100 N. York, 510.

CARPENTER, J.  The prisoner was charged with arson. The principal witness against him was Matthew Frawley, who testified that he burned the barn, having been hired to do so by the prisoner; that he spent the greater part of the day at his house; that in the evening he took him into his cellar, proposed to him that he burn the barn and furnished him with some whisky and with a bottle partly filled with kerosene oil; that he took the oil from a barrel nearly empty, so that he had to tip the barrel and then could not fill the bottle; that he fired the building without using the oil, and subsequently threw it away, describing the place. He also described the cellar minutely, and, as it appears by the testimony of other witnesses, correctly.  The bottle was found by an officer in the place pointed out by the witness, and was as described by him.  It was produced in court and identified by him.

The production of the bottle in court and its identification by the witness, with the testimony as to the finding of it, and as to its condition, were objected to, but admitted. The first question in the case is, whether they were properly admitted.

The rule is that an accomplice ought to be corroborated as to some fact tending to connect the prisoner with the offense.  The question now raised, in one aspect of it at least, is, whether it is error to allow the attorney for the state to corroborate his evidence as to a fact which is in issue, but which does not inculpate the prisoner.

The credibility of an accomplice in respect to all his testimony is for the jury.  They may require corroboration in

respect to that part of it in which he states his own connection with the crime. Manifestly, if the defense had questioned that, the evidence objected to would have been admissible for that purpose. But the credibility of such a witness is for the jury as to all that he says. Hence any fact or circumstance which tends to corroborate in a slight degree any part of his testimony, is admissible. It was so held in *State* v. *Wolcott*, 21 Conn., 272. In that case the accomplice detailed two conversations which he had with the prisoners, or one of them, in which they related to him conversations which they had had with third parties. The third parties were admitted to testify that they in fact had such conversations, although there was nothing in either conversation in itself which tended to criminate the prisoners. The court, by CHURCH, C. J., say they " showed a privity and connection, and a conspiracy between Dickerman and the prisoners," and that Dickerman " was their confidant to whom they imparted their plans and their movements as he had testified." Still, all the inculpating testimony came from the accomplice, so that the case is an authority for holding that he may be corroborated as to any material fact in issue, although that fact does not connect the prisoner with the offense. In that case, as in this, there was other corroborating evidence which did inculpate the prisoners. In that case it was not held, and we do not hold in this, that corroboration as to facts which do not inculpate the prisoner will be sufficient, but simply that evidence which corroborates as to any fact in issue is admissible for what it is worth. Bishop on Criminal Procedure, § 1170, says :—" Not inconsistently with these views it is permissible also to submit to the consideration of the jury evidence tending to show the accomplice's probable credibility in his narration, though coming short of the required corroboration."

But we cannot say that the evidence objected to in this case has no tendency to connect the prisoner with the crime. The witness was corroborated as to the cellar, its condition and things in it; particularly as to the bottles and the barrel of kerosene oil. The fact that the bottle of oil was found

in the place he pointed out shows that he had it as he said he had ; and that fact, in connection with the fact that there was on that day an empty barrel from which a small quantity of oil could be taken by tipping it, and that there were also in the cellar empty bottles of similar size and shape, renders it probable that he got the oil at the time and place named. The fact being established that he had the bottle of oil and that he got it in the prisoner's cellar, the inquiry is a pertinent one, of whom did he receive it ? and for what purpose ? In answer to these questions the accomplice says he received it of the prisoner, and for the purpose of firing this barn. And here he is corroborated by the prisoner's declarations made to the detectives. The testimony of the detectives however goes further than that, and, if believed by the jury, fastens the crime upon the prisoner.

The question is not therefore whether this evidence is admissible as supplying the corroboration which the evidence of an accomplice needs at a point which connects the prisoner with the crime, for the corroborating evidence of that character had already been furnished ; but whether the testimony of an accomplice may be corroborated in other and minor points, which do not, taken by themselves, touch the prisoner. And this is a question, not arising under the law peculiar to accomplices, but under the general rules of evidence with reference to witnesses who from any cause stand before the jury with their credibility seriously impaired. Thus, suppose doubt were thrown upon the whole story of the accomplice, and it was claimed by the defense that he did not set the barn on fire, would it not on general principles be admissible to prove, by a person who saw him do it, that his story was true ? And yet this would not connect the prisoner with the crime.

The remaining question arises upon the charge of the court to the jury. The learned counsel for the prisoner complain that the charge of the court puts the testimony of an accomplice " on a par with other kinds, and says merely, if you are convinced beyond a reasonable doubt, by the testimony of an accomplice, of the defendant's guilt, that is

sufficient; stating exactly the same rule that applies to all kinds of evidence, and containing no caution, no advice, and showing no distinction between testimony of an accomplice and other testimony." If that is a right view of the charge there is doubtless foundation for the complaint. But we do not so interpret the charge.

The court first told the jury that " Frawley was the active agent in this crime, and his story comes to you under such circumstances as to call for the most careful scrutiny. In the argument a good deal of stress has been laid upon what is claimed to be a rule of law,—that the story of an accomplice ought to be received with great care; and that undoubtedly is the rule. Our Supreme Court quite a number of years ago laid down this rule in language better than I can give it myself, and in order that you may have it exactly I will read it to you."

The court then proceeded to read the charge of the Superior Court to the jury in the case of *State* v. *Wolcott*, 21 Conn., 272, and from the opinion of the Supreme Court sustaining that charge. Of course the jury must have understood that the court adopted the portions read from that case as a part of his instruction to them.

In that charge, consequently in this, we find these words:—" An accomplice is an admissible witness, but as he comes before the court under suspicious circumstances his testimony ought to be received with great caution. As a general rule it will be unsafe to convict upon the testimony of an accomplice alone, uncorroborated by other testimony. It ought to be corroborated in material facts connecting the prisoners and each of them with the crime; but the degree of credit to be given to the testimony of an accomplice, and the amount of corroboration necessary to render it satisfactory, are matters to be considered and determined by the jury." That charge was sustained by this court in the former case and we must regard it as correct in this.

Immediately after reading from the report of that case the court said:—" Now if I should attempt to make a rule

out of this language of the Supreme Court it would be something like this—that the jury may hear the testimony of an accomplice, and that upon the naked testimony of an accomplice they have the right to find a verdict of guilty, but that they ought never to do so unless they find such evidence to be so clear, strong and convincing that it removes from their minds every reasonable doubt of the guilt of the accused."

This is the portion of the charge which is complained of. If this was the whole charge, or if we were required to consider the rule thus formulated apart from what precedes and what follows it, there would be difficulty in sustaining it. But we cannot presume that the judge intended to withdraw from the jury the caution he had already given them. They must have understood that the scales in which the evidence of an accomplice is to be weighed are different from those in which other evidence is weighed. It is true the testimony of an accomplice may be so strong and convincing as to justify a verdict of guilty without corroboration; and that was what the jury were told. They were also instructed to exercise caution in weighing his testimony. That negatives the claim that his testimony was placed upon the same footing as that of other witnesses. We think therefore that the fair import of the whole charge is, that if the jury after making due allowance for the suspicious circumstances under which the testimony is given, are fully convinced of the prisoner's guilt, they may return a verdict of guilty.

Again. The case was not submitted to the jury upon the naked testimony of the accomplice, for the court had previously told the jury that his testimony should be received with caution, and that it ought to be corroborated in material facts connecting the prisoner with the crime; and immediately after laying down the rule just alluded to, the judge said to the jury,—" Now, taking that to be the rule, the state say there is no occasion for its application in this case, because they say that Frawley is corroborated." He then called attention to the corroborating evidence, which

we can see was amply sufficient to justify the jury in finding that the witness was corroborated as to material facts. Now we must presume that the jurors did their duty, that they considered the case as it was presented to them, that they required the accomplice to be corroborated, and that they considered the corroborating evidence and regarded it as sufficient. To suppose otherwise and assume that they founded their verdict upon the naked uncorroborated testimony of the accomplice, imputes to them a culpable neglect of duty and a manifest violation of their oaths.

We find no error in the judgment.

In this opinion the other judges concurred.