THE STATE OF CONNECTICUT *vs.* CHARLES FROST.

.Third Judicial District, Bridgeport, October Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES AND HINMAN, Js.

In a criminal case tried to the court under § 2 of Chapter 267 of the Public Acts of 1921, the trial judge performs the functions of both court and jury, determining the ultimate fact of guilt or innocence upon the same principles that govern the verdict of a jury.

In the absence of provision to the contrary, it must be assumed to have been the legislative intent to preserve to the accused every right of appeal recognized in a trial to the jury, with the additional privilege, necessarily lacking in the jury case, of securing a review of the finding as in civil cases tried to the court, by claiming either corrections of, or additions to, the subordinate facts or by challenging the conclusions of law and fact which should always be stated in the finding.

The State *v*. Frost.

A conclusion in the finding that the accused was proven guilty beyond a reasonable doubt can only be attacked on the ground that it is not supported by the subordinate facts.

To present to this court the claim that the evidence does not establish the guilt of the accused beyond a reasonable doubt, strict analogy to the procedure in jury cases would require the accused to make a motion to set aside the judgment, which corresponds to the verdict, and to base his appeal upon the denial thereof; but in the interest of speed and simplicity, the procedure adopted by this court requires only that the accused make an assignment of error of such claim when he takes his appeal, which, if that be his only reason of appeal, should be done within ten days from the rendition of the judgment. In such cases the procedure relating to the presentation of the evidence upon the record and to the taxation of costs, is that now provided for appeals from the denial of motions to set aside verdicts.

That a witness was an accomplice does not affect his testimonial competency, but if his veracity is questioned upon the trial because of moral turpitude or self-interest, it is within the reasonable discretion of the trial court to warn the jury of the danger of crediting his testimony unless it is confirmed by independent evidence.

In this State, it is within the power of the trier, whether court or jury, to convict the accused upon the uncorroborated testimony of an accomplice, provided such evidence establishes his guilt beyond a reasonable doubt.

The evidence in the present case reviewed and *held* to support the conclusion of the trial court that the accused was guilty beyond a reasonable doubt of the crime of statutory arson.

It is the duty of the clerk and the trial court to carry out the mandatory provisions of § 5688 of the General Statutes that the jury panel shall be drawn "in a manner to ensure a reasonable distribution among the several towns"; but the determination of a challenge to the array upon the ground that the statute has been violated rests within the sound discretion of the trial court and if, thereafter, the accused elects to be tried to the court, such determination will not be reviewed by this court upon appeal.

In a case tried to the jury, the remarks of the State's Attorney may, if flagrantly improper, constitute reversible error although not objected to in the trial court; but in a case tried to the court, where the danger of prejudice to the accused is slight, they will rarely, if ever, furnish a basis for appeal.

The accused claimed that the trial court erred in excluding testimony concerning conversations between two of his accomplices and third parties. *Held* that the finding was inadequate to show

The State *v*. Frost.

the relevancy or materiality of these conversations and that, upon the record, they were properly excluded as hearsay.

To contradict the testimony of the accused that he had not been in the company of F, the State offered in rebuttal two witnesses who were permitted to state that they had seen them together during the time in question. *Held* that there was nothing in the record to support the claim of the accused that this evidence was not proper rebuttal.

An identification of an accused made by a witness prior to the trial under conditions removing suspicion of unfairness or unreliability, is admissible in evidence together with all the circumstances under which it was made. Such identification is of the utmost aid in determining the trustworthiness of a subsequent one made in the court room at the time of the trial.

Argued November 11th—decided December 16th, 1926.

INFORMATION charging the accused with the crime of statutory arson, brought to the Superior Court in Fairfield County and tried to the court, *Banks, J.;* judgment of guilty and appeal by the accused. *No error.*

*Homer S. Cummings,* with whom were *Clifford B. Wilson* and *Raymond E. Hackett,* for the appellant (the accused).

*William H. Comley,* State's Attorney, with whom was *E. Earle Garlick,* Assistant State's Attorney, and, on the brief, *Vincent L. Keating,* for the appellee (the State).

WHEELER, C. J. In his first three assignments of error the accused assigns as error the conclusion reached by the court in paragraph sixty-five of the finding, that "Friedman, Isaacson, Baker and Cohen set fire to and burned said factory building of A. Phillips & Company, Inc., with the knowledge of the defendant Frost and at his request and instigation and pursuant to their employment by Frost to burn said building," because not supported by the facts found. His fourth assignment is that this conclusion was not proven beyond a

reasonable doubt. His fifth and sixth assignments are that the evidence did not establish the guilt of the accused beyond any reasonable doubt and did not exclude every reasonable presumption and hypothesis of innocence. His tenth assignment is the error of the court in denying his motion to set aside the judgment. All of these assignments were intended to raise the one question, "Whether on all the evidence the defendant is guilty beyond a reasonable doubt of the crime charged."

The procedure of trying criminal causes to the court at the election of the accused is of comparatively recent origin in this State, and the record in this case was prepared upon the analogy of the procedure in a civil case tried to the court. That the profession may no longer be in doubt about the proper procedure on appeal from the judgment in a criminal case tried to the court, we state the procedure.

The statute, Public Acts of 1921, Chapter 267, § 2, giving the accused his election to be tried by the court, was not intended to take from him any substantial right theretofore existing in behalf of one accused of crime. The court is by this statute substituted for the jury and fulfills.in the trial of a criminal cause without a jury the duties of both court and jury. Fulfilling the function of the jury the court determines the guilt or innocence of the accused and is governed in that decision by the same principles as would have governed the jury in passing upon that question. Fulfilling the function of the court it determines, as in all cases, all interlocutory rulings made prior to or during the trial, and in its final decision applies the law to the facts found proven. Thus every question which could be legitimately made on appeal in the case tried to the jury can be made on appeal in the case tried to the court. There is one difference in the case tried to the

court which of necessity gives the accused an additional right. In the criminal case tried to the jury the court makes up its finding on appeal by incorporating the facts offered in evidence and claimed to have been proved by either party; upon this record on appeal the instructions to the jury are tested. In the criminal case tried to the court it makes a finding of the facts upon which its conclusions are reached. Its finding should contain the subordinate facts found and then the conclusions reached from these subordinate facts. The method thus far conforms with that of the civil case tried to the court. It is entirely practical to carry out this method in the case tried to the court. In that tried to the jury there is no practical method of having the jury make a specific and detailed finding of the facts. In special cases a finding by the jury of certain specific facts may be had by way of a special verdict, or by way of answers to interrogatories. If there were a practical method of having the jury make in every case a finding of facts, that would be the best and the fairest practice. There is every reason for the adoption of this method in the case tried to the court, and no reasonable objection to it so far as we can conceive. The appeal may then bring up every interlocutory ruling and all errors predicated upon the conclusions reached by the court, and if the facts found in material matters would support assignments of error for their correction, or for addition thereto, these may be assigned as error on the appeal as in the present practice in civil cases tried to the court. It is essential that the conclusions reached by the court should be stated in the finding. If these be conclusions of fact based upon the subordinate facts, these should be stated. If these be conclusions of law reached by the court of its own motion, or in passing upon claims of law made by either party, these should be stated. A conclusion in

the finding that the accused had been proven guilty as charged beyond a reasonable doubt could only be tested on appeal by determining whether the subordinate facts fairly supported this conclusion. We approve of this method in *State* v. *Henderson,* 102 Conn. 658, 659, 129 Atl. 724.

If an accused in a case tried to the jury desires to raise the question whether upon the evidence he could be found proven guilty beyond a reasonable doubt, his only method of having that question determined on appeal would be by making his motion to set the verdict aside as against the evidence and assigning the denial of that motion as one of the grounds of his appeal. The legislative provision according to the accused the right to be tried by the court did not, in terms or by implication, deprive the accused of his right of appeal upon the ground that upon the evidence he could not be found proven guilty beyond a reasonable doubt, nor deprive him of any other right of appeal. We must assume that every substantial right of appeal applicable in the case tried to the jury is applicable to that tried to the court, and that the procedure must conform as nearly as may be in the case tried to the court with that in the case tried to the jury. The judgment in the case tried to the court is the equivalent of the verdict in the case tried to the jury; the court taking the place of the jury, *pro tanto.* By analogy, to make the practice uniform in each of these methods of trial, after judgment the accused would be required to file his motion to set aside the judgment upon this ground, and upon denial of his motion, take his appeal. This would require the trial court to again pass upon the ground necessarily involved in its judgment and delay the appeal pending the argument and disposition of the motion. In the interest of a simpler and speedier procedure we think

the making of this motion should be dispensed with and that the accused should only be required to assign this reason of appeal among his assignments of error when the appeal is taken. If this is the only reason of appeal, he must take his appeal within ten days from the rendition of judgment, the practice in this case conforming as near as may be with that provided by General Statutes, § 5841, for setting aside a verdict. The procedure for securing the presentation of the evidence upon the record and the method of taxing costs against the accused, should he not prevail upon his appeal, shall be that now provided in the case of appeals from the denial of 'motions to set verdicts aside.

Reason five of the accused's assignment of errors sufficiently assigns this reason of appeal; it is properly before us under the practice we have outlined because made one of the many reasons of appeal at the time the appeal was taken. Upon this assignment we determine upon the entire evidence whether the trial court erred in holding upon the evidence that the accused had been proven guilty beyond a reasonable doubt.

Paragraph sixty-five is treated by the trial court as the finding of a subordinate fact; it is in reality a conclusion from the subordinate facts and properly treated as such by counsel for the accused in their brief. Testing the conclusion by the subordinate facts found it is very clear that they do fully support this conclusion. In many particulars counsel for the accused claim the facts are found without evidence, but since, if the corrections claimed were made, the ultimate question would still be, "whether on all the evidence the defendant is guilty beyond a reasonable doubt of the crime charged," and that question must be determined under the fifth assignment of error, the counsel very properly do not attempt to point out the material corrections

of the finding on which they rely, but confine their argument upon this point to a consideration of the evidence. We shall pursue the same course, for by it the rights of the accused will be fully protected. The procedure we outline will aid in rendering this new method of trying criminal causes by subjecting the decisions of our trial court to review in this court upon every question which could be reviewed in a case tried to the jury. The efficiency and serviceability of this method of trial has been fully approved in this jurisdiction save only that it is thought to impose in capital cases too heavy a responsibility upon a single judge. It has likewise long been tried and approved in Maryland.

We dispose first, of the principal ground of appeal, that the evidence does not establish the guilt of the accused beyond a reasonable doubt. Counsel for the accused claimed that the accused was entitled to an acquittal because the State's case rested upon the uncorroborated testimony of confessed accomplices to the crime with which the accused was charged. They rely for their contention upon the rule of law stated in *State* v. *Maney,* 54 Conn. 178, 193, 6 Atl. 401: "As a general rule it will be unsafe to ·convict upon the testimony of an accomplice alone, uncorroborated by other testimony." Of this rule we said in *State* v. *Carey,* 76 Conn. 342, 349, 56 Atl. 632: "We think there is no such rule of law for the reasons above given." We there point out that under our law the competency of the accomplice is "on the same footing as other witnesses." Neither his moral turpitude, whether shown by confession, or conviction of crime, or otherwise, or his self-interest, however great, affects his competency as a witness. "It is true," we say, "as it always has been, that when a competent witness is shown in the course of a trial to have exhibited moral

turpitude of a nature ordinarily inconsistent with veracity, or to have such an interest in giving his testimony as to render the temptation to perjury peculiarly powerful, it is the right of the court in the exercise of its discretion, and may be its clear duty, to call the attention of the jury in the strongest terms to the danger of giving credit to such testimony, unconfirmed by independent evidence." We will not interfere with the court's exercise of discretion in its ruling upon such a matter unless it is unreasonable and to the manifest prejudice of the accused. "It is the character and interest of the witness," we further say, "as shown upon the trial, and not the mere fact of his being an accomplice, that must determine the discretion of the judge in commenting on his credibility." See also *State* v. *Weiner*, 84 Conn. 411, 413, 80 Atl. 198; *State* v. *Levy*, 103 Conn. 138, 147, 130 Atl. 96. The trial court invoked and applied in reaching its decision a rule even more favorable to the accused than the rule which counsel for the accused invoke—that of *State* v. *Maney*, *supra*—when it announced as a part of its decision: "No man could be convicted of a crime upon the uncorroborated testimony of such witnesses. No man should be convicted or found guilty of a crime upon such testimony, even if it was corroborated in some, or even in many parts of its details, unless the other credible evidence in the case, being used to test these stories, and to see where the truth really lies, is such that the mind is forced to the conviction that those stories are intrinsically true, if possibly improbable, or even incredible in some parts of the detail." It is under our rule within the power of the trier, court or jury, to convict an accused upon the uncorroborated testimony of accomplices to the crime provided the court or jury believe from their evidence that the crime charged had been proven beyond a reasonable doubt. The case

does not require us to determine whether the testimony of these accomplices is worthy of credit and would, alone and uncorroborated, satisfy the requirement of the law—proof beyond a reasonable doubt. We purpose determining the case from the standpoint of the trial judge by ascertaining whether there was corroboration of the statements of these accomplices which, when weighed with the statements, was sufficient to establish the guilt of the accused beyond a reasonable doubt.

In our consideration of this reason of appeal, we shall not attempt to present a review of the evidence which we have made in reaching our conclusion. That could not be done within the limits of this opinion. The State claimed to have proved the accused Frost guilty of the crime of statutory arson by having caused the goods and material in the second floor of a factory in Bethel occupied by the Xcluso Company, of whose stock the accused owned practically all, to be set fire to. The fire was set and was of undoubted incendiary origin, and Friedman, Baker, Cohen and Isaacson either set, or aided and abetted in setting the fire. The State claims to have proved that these men were hired by Frost to commit this crime in order that he might secure the insurance upon the property destroyed or damaged as a result of the fire. The defense claims that the origin of the fire was due to the antagonism of the labor union for Frost growing out of a strike in this company's manufactory in New York in 1923. There was no evidence tending to support this claim. No theory or motive other than that claimed by the State to have been proved of the origin and cause of this fire is supported by the evidence.

The State's witnesses to this crime, Friedman, Cohen and Isaacson, were accomplices to the crime. Their testimony, if credited, was entirely sufficient upon

which to find the accused guilty as charged, and upon the theory of the crime as claimed by the State. In its main features their story is consistent and credible, and in these main features bears, too, the earmarks of its truth. Some of its minor features appear to have been invented for the occasion. In these main features it is corroborated at many and vital points, for example, as to the acquaintance of Friedman with Frost from the time of the strike in 1923, down to the time of this fire, and as to Frost's contact with Friedman covering this period, and his arrangement for the employment of Cohen in the factory prior to the fire, as to Friedman's telephone message to Frost at the Xcluso factory at Bethel just before Friedman, Baker and Isaacson started for Bethel to set the fire, as to Cohen's employment by Frost on the day of the fire, his instruction to him in preparation for the fire, his conduct in the factory on the day of the fire, his assistance in getting Friedman, Baker and Isaacson in the factory after the employees had left, and Friedman's communication by telephone with Frost in Washington, D. C., after the fire, and shortly subsequent to this message the payment by Frost to Friedman of $150. The circumstances surrounding the occurrences after these men reached Bethel at about 4:45 p. m., until the fire was set at about 6:40, corroborate the statement of these accomplices. It seems incredible that three men who were strangers to this factory could have secured, unnoticed, an entrance and operated with the rapidity they did, had they not had the assistance of Frost, which they testify they had.

The accused presents his previous good character, his strong financial standing and claims to have proven that he had no motive to cause this fire to be set. He entirely denies having ever had any acquaintance or dealings with Friedman and Cohen. He denies all par-

ticipation in this crime and contradicts all the statements of Friedman and Cohen so far as they implicate him in the occurrences of April 2d. Some parts of his testimony find corroborating support in the other testimony presented by the accused. And some parts of the story of these accomplices is contradicted by witnesses for the accused. The State has at many points offered testimony directly in conflict with that of the accused and directly corroborating Friedman and Cohen. The case was one of conflicting evidence. The trier might reasonably have found that the procuring of the insurance. upon the property of this company was the motive inducing the setting of the fire.

We have made a detailed and careful summary and digest of all the evidence and given it the fullest consideration. The conclusion of the trial court was not reached, nor has our conclusion been reached, upon an inadequate presentation of the case by counsel for the accused or the State, but upon a full, fair and skillful presentation of the case in behalf of each. Giving due weight to the evidence submitted by the accused and to his prior good character, we are fully satisfied that the trial court could reasonably have reached upon the evidence, the conclusion it did; indeed, we find no other conclusion which could have been reasonably reached upon the evidence than that the accused was proven guilty as charged beyond a reasonable doubt.

Aside from the rulings on evidence, the accused relies upon two additional claimed errors of law, which we take up in the order discussed in the appellant's brief.

1. In the overruling of the accused's challenge to the array because the jury panel was not drawn "from a suitable number of jury boxes in a manner to ensure a reasonable distribution among the several towns of jurors as drawn," in accordance with General Statutes,

§ 5688. We have construed the provisions of this section to be mandatory. *State* v. *Kelly,* 100 Conn. 727, 730, 125 Atl. 95. Clerks should conform to its provisions, and trial courts should see that this is done. We shall not reiterate the construction given this section in *State* v. *Chapman,* 103 Conn. 453, 472, 130 Atl. 899. The determination of such a challenge is within the sound discretion of the trial court, which will not be overturned on appeal unless the record plainly indicates that the discretion of the court has been unreasonably exercised, and as a consequence, that the rights of the accused have been unfairly prejudiced. *State* v. *Luria,* 100 Conn. 207, 209, 123 Atl. 378; *State* v. *Chapman, supra.* This question we cannot properly consider upon this appeal, since the accused, after its disposition by the trial court, elected to be tried to the court.

2. The remarks of the State's attorney upon which the accused predicates error were not excepted to at the time made and consequently the right to thereafter predicate error upon their making was waived, the remarks not having been flagrantly improper. "While this court may, in very flagrant cases of abuse of the State's Attorney's privilege, grant a new trial although the aggrieved party has failed to move for it in the court below, or to call that court's attention to the objectionable remarks, it is only in flagrant cases that it will do so. Ordinarily, unless such action has been taken in the trial court, such utterances afford no ground for an appeal or application to this court for a new trial." *State* v. *Washelesky,* 81 Conn. 22, 28, 70 Atl. 62. In the case tried to the court the danger of prejudice to a party to the case arising from the making of improper remarks is far less than when tried to the jury, and will rarely, if ever, furnish a basis for appeal. The remarks in the instance complained of

appear to have been innocuous; neither serving to aid the State's cause, nor to prejudice the accused's.

The rulings on evidence which counsel for the accused press upon their brief are five. They are too inadequately stated upon the record to enable us to consider them fully, from the standpoint of counsel for the accused. Upon the claim that one Feiger was in close contact with Friedman and was his outside representative and engaged in seeking to gain what information he could concerning the case against Friedman, the accused offered to prove a conversation between Streaman, a lieutenant of police at Danbury, and Friedman. The offer was made to show the connection between Feiger and Friedman. The record of this ruling does not purport to give what the conversation was, nor state any facts or offers of proof which would tend to indicate its relevancy and materiality. As the ruling stands it was properly excluded as hearsay. Similarly the offer to prove a conversation between Reardon, a private investigator, and the attorney for Cohen, one of the accused, does not, so far as the record states, appear to have been either relevant, material or competent, or tend to contradict anything that Cohen had testified to; its exclusion was correct.

The State called in rebuttal Baines, and inquired of him as to whether he had seen Feiger in company with Frost, the accused, at the National Republican Club. This was objected to as not being rebuttal, the objection was overruled, and an exception by the accused noted. The purpose of the offer was to contradict the testimony of Frost. The witness answered that he had seen Frost with Feiger, that Frost had introduced him at the Club and been responsible for Feiger's bills there, among others, for the hire of an automobile from the Biltmore Corporation on March 14th, 1925. For a like purpose the witness Kaiser, an employee of the Bilt-

more Corporation, was permitted, over the objection of the accused, to testify on rebuttal that he drove Feiger and three others in an automobile from New York to Portchester on March 14th, 1925. There is nothing in the record as to these rulings showing, or tending to show, that this was not proper rebuttal. Further, none of the rulings thus far considered could, so far as the record of the ruling goes, have been regarded as so prejudicial as to either have affected the result, or deprived the accused of a fair trial.

The State's witness Kaial testified on direct examination that he had worked for the Xcluso Company in New York in 1923 as shipping clerk, and during the period of the strike at the factory in this year he had quite often seen the accused Friedman around the factory, and there seen him in company with the accused, Frost. On cross-examination he testified that the boss of the factory was Frost, that he left the factory in the spring of 1923, a week after the strike ended, that it had lasted about a month, and after leaving this factory, the next time he saw Friedman was when one of the officers took him to the county jail in Bridgeport two weeks previously (about March 1st, 1926) to see if he could identify Friedman, and that he spent about ten or fifteen minutes in the jail and there identified him. Following Kaial the State introduced as a witness Kearns, connected with the State's Attorney's office, who testified that he had taken Kaial to the county jail. He was then asked to describe what was done at the jail with reference to the identification of Friedman, and over the objection and exception of counsel for the accused, replied that Kaial went by the front of the cells and when he came to the third man from the end of the tier of cells, he stopped, and looked at this man for two or three seconds, and then passed on, that the witness then asked this man to step out,

which he did, and he was Friedman.  The cross-examination of Kaial revealed a part of what took place at the jail with reference to the identification there of Friedman by Kaial; necessarily the State was thereupon entitled to all that took place during the identification, and whether that was developed through the witness Kaial on redirect, or through another witness to the occurrences at the jail, was immaterial.  Further, we think that what was done at the time Kaial identified Friedman at the jail would have been admissible as a part of the State's case, even though the cross-examination had not opened the way for its admission.

The trustworthiness of the identification is of first importance.  An identification of an accused made publicly for the first time by a witness in court when there presumably have been many opportunities for the witness to have seen the accused and to have heard him spoken of by a given name, may be open to question, but if it be shown that the witness identified the accused previously and the first time after his arrest or incarceration and under circumstances which removed the suspicion of unfairness or unreliability, the prior identification, together with the circumstances surrounding its making, will be of the utmost aid in determining the trustworthiness of the identification made in the court room.  Mr. Wigmore puts the reasons for the admission of the prior identification with unanswerable force: "Ordinarily, when a witness is asked to *identify* the assailant, or thief, or other person who is the subject of his testimony, the witness' act of pointing out then and there the accused (or other person) is of little testimonial force.  After all that has intervened, it would seldom happen that the witness would not have come to believe in the person's identity.  The failure to recognize would tell for the accused; but the affirmative recognition might mean little against

him. . . . To corroborate the witness, therefore, it is entirely proper . . . to prove that *at a former time,* when the suggestions of others could not have intervened to create a fancied recognition in the witness' mind, he recognized and declared the present accused to be the person." 2 Wigmore on Evidence (2d Ed.) § 1130; *Burke* v. *Kellough,* 235 Mass. 405, 126 N. E. 787; *State* v. *Claymonst,* 96 N. J. L. 1, 114 Atl. 155; *State* v. *Wong Wen Yeung,* 99 Ore. 95, 105 Pac. 349. We are not unmindful of the number and character of the courts of the States which take a contrary view, nor of the reasons they give for the exclusion of this evidence. Giving due heed to these we can but think that their adherence to a technical rule deprives the courts of their jurisdictions of the benefit of a class of evidence which has strong testimonial value when weighed in the scales of the common sense of mankind. There is no error.

In this opinion the other judges concurred.