**UNITED STATES of America,
Appellee,**

v.

**Henry H. EISENMANN, Defendant-
Appellant.**

**No. 494, Docket 32062.**

United States Court of Appeals
Second Circuit.

Argued May 9, 1968.

Decided June 24, 1968.

Jacob W. Heller of Heller & Dretzin, New York City, for defendant-appellant.

Michael J. Gillen, Asst. U. S. Atty., Eastern District of New York (Joseph P. Hoey, U. S. Atty., on the brief), for appellee.

Before LUMBARD, Chief Judge and SMITH and ANDERSON, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Henry H. Eisenmann appeals from a judgment on jury verdict in the District Court for the Eastern District of New York, Judge Rayfiel, convicting him of violating 18 U.S.C. § 1001. Appellant was indicted on two counts: the first that on or about May 15, 1962, in his capacity as an employee of the Internal Revenue Service, he accepted $1,500.00 from Dr. Sidney S. Glass, whose 1958 income tax return was being audited by appellant, with the intent to have his decisions and actions influenced thereby, in violation of 18 U.S.C. § 202; the second that on or about July 31, 1962, in a matter involving the audit of Dr. Glass' return, appellant knowingly and wilfully made a false, fictitious and fraudulent

statement and representation, and made and used a false writing and document, and submitted a false and fraudulent report concerning the audit, in violation of 18 U.S.C. § 1001. The jury returned a verdict of not guilty on count 1 and guilty on count 2, and Eisenmann appeals. We find no error and affirm the judgment.

The government's principal witness was Dr. Glass. He testified that in May 1962, appellant came to his home, and asked to see his records for 1958; that he called accountant Frank Salisbury, who went over the records with appellant; and that appellant returned alone later that day, told Dr. Glass that he would be "in a lot of trouble," and said that he could "straighten it out" for $1,500.00. Two days later, Dr. Glass testified, the bribe was paid; and sometime thereafter, Dr. Glass received a statement that there was no change in his tax liability. Salisbury, the accountant, testified that his involvement with the audit was limited to June 1962.

Sandra Glass, the doctor's estranged wife, testified that her income tax return for 1958 had heen prepared by an accountant, who had sent her a copy of the return; and that she had never shown the copy to anyone, and specifically not to Dr. Glass or any Internal Revenue Service officer.

Appellant testified that he was assigned to the audit of Dr. Glass' 1958 return in May 1960, and that he first called the doctor in June 1960 to request to see the relevant books and records; that when he went to the doctor's house to get the records, the doctor called Salisbury, and appellant and Salisbury went to the latter's office to begin the audit; and that after that meeting appellant never saw Dr. Glass again. Appellant also testified that he had never seen the original 1958 return filed by Sandra Glass, and that during the audit he relied, as was his practice of twenty years standing, on an unsigned pencilled copy of her return. He also denied that Dr. Glass gave him any money, that he had told Dr. Glass that he owed $4,000 in ad-ditional taxes (as Dr. Glass had testified), and stated that his audit had been fair, correct, and honest, and that he had not submitted any false writings to the Internal Revenue Service in connection with the audit.

The report of Eisenmann to which count two of the indictment relates is Government's Exhibit 2. It states, *inter alia*, that alimony of $4,500 had been paid under a state court decree, that items of income and expense were examined and found to be substantially correct as stated on the return, that the alimony payments were verified by cancelled checks; that the children claimed as deductions on the return lived with the taxpayer during 1958, and that "Wife's retained copy of return inspected and the alimony received was shown as income."

Sandra Glass' original return for 1958 showed that she had claimed as deductions the same children claimed by the doctor, and that she reported alimony income of $5,100 (although the doctor had taken a deduction for alimony payments of only $4,500). There was no evidence that appellant ever saw this return.

Appellant contends that 18 U.S.C. § 1001 does not apply to reports submitted by Internal Revenue officers in the course of their work; that the evidence was insufficient to sustain his conviction for violation of that section; and that there were errors in the instructions to the jury.

 The argument that 18 U.S.C. § 1001 is inapplicable here is based on the existence of 26 U.S.C. § 7214(a) (7), which provides that "Any officer or employee of the United States acting in connection with any revenue law of the United States * * * who makes or signs any fraudulent entry in any book, or makes or signs any fraudulent certificate, return, or statement * * * shall be dismissed from office or discharged from employment and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both." This section, appellant

submits, evidences a Congressional intent that it should not be a crime for a revenue officer to submit a report which is merely false. The Senate and House committee reports, however, make it very clear that Congress changed the word "false" to "fraudulent" simply "to avoid the implication that this provision would apply to an innocent making of a false entry." 1954 U.S.Code Cong. and Adm.News pp. 4575 and 5255. No such implication is possible with 18 U.S.C. § 1001 since it, unlike 26 U.S.C. § 7214(a)(7), contains the phrase "knowingly and willfully." [1] Thus, it is clear on the face of 18 U.S.C. § 1001 that an Internal Revenue agent cannot, contrary to Congressional purpose, be convicted under 18 U.S.C. § 1001 for making an "innocent" false statement. The wording of the two statutes which provide different penalties is thus in harmony with Congressional intent. There are many acts which are made criminal by two or more sections of the Code, and if the government chooses to prosecute the actor under the section providing the *harsher* penalty, he cannot complain. See, e.g., Ehrlich v. United States, 238 F.2d 481, 485 (5 Cir.1956). Eisenmann, who was prosecuted under the section providing the *less harsh* penalty, has even less cause for complaint.

■■ Appellant's contention that the evidence was insufficient to sustain his conviction is based partly on the alleged failure to show any particular statement in the report which appellant knew was untrue, and partly on the argument that since the only motive for submitting a false report was to cover up the alleged bribe, and the jury acquitted him on the bribery count, no motive could have existed for making a false report, so that the verdicts were inconsistent. The latter argument fails entirely, for the inconsistency between verdicts does not undermine a guilty verdict. United States v. Carbone, 378 F.2d 420, 422–423

(2 Cir.1967); Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932). And the jury could, at least, have found that appellant never had examined a copy of Sandra Glass' return —thus the statement that "Wife's retained copy of return inspected" could have been found false.

■ A number of claims of error in the instructions are made in appellant's brief. But so far as appears, only two of the claimed errors were brought to the attention of the trial court, and in the absence of "plain error" (F.R.Crim. Proc. 52(b)) they are the only ones which need be considered here. United States v. Indiviglio, 352 F.2d 276 (2 Cir.1965), cert. denied 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663.

■ After the jury had commenced its deliberations, it sent a note to the Court asking: "Can the defendant be found guilty on one count and not on the other?" The Court said to the jury: "I called you in to tell you that the answer is yes." Counsel for appellant then stated that he wished to take an exception, and the Court inquired: "To my telling the jury that they may find a defendant guilty on one or more than one count and not on the other?" Counsel replied, "Yes." Appellant now bases his argument that the jury should not have been instructed that it could find appellant guilty on only one count on the alleged failure of the Court to make clear to the jury, in its original instructions to them, that two separate crimes were charged—the Court emphasized the bribery as the "real issue" in the case, it is argued. However, the jury did *not* ask whether it could find appellant guilty on only the second count; it inquired as to whether it must find him guilty on both. Appellant's argument depends, then, on hindsight. The Court's instruction was clearly correct when it was made. The most that could have been done by the

1. Of course, it must be assumed that Congress used the word "implication" advisedly since even without the words "knowingly and willfully" in the statute, a felony conviction could not *in fact* be obtained on the basis of an "innocent" false statement.

Court would have been a supplementary charge explaining the difference between the counts—but appellant did not request that of the Court. And in any case, the charge in its entirety did distinguish between the counts, and did set out for the jury each element of each offense.

The second claim which needs consideration is that the trial court erred in refusing to charge the jury that if it concluded that the data in the report was incorrect, but only because of deception practiced by Dr. Glass, then they could not conclude "that this was deliberately or wilfully done within the limites (*sic*) of the statute." If this were a theory of defense which the jury needed to be told about specifically and in some detail, error might be shown. See United States v. O'Connor, 237 F.2d 466 (2 Cir.1956). But surely the trial court could credit the jury with enough intelligence to be able to conclude that if appellant was fooled by Dr. Glass, any false statements resulting from that were not "wilfully" made. And in any case, the jury was specifically instructed, with respect to count two, that the government must establish that appellant made a false statement "with the knowledge that the writing or document was false, fictitious, or fraudulent."

In refusing to give the requested charge, the trial court held that no sufficient foundation had been laid. In this ruling we concur. Appellant has been unable to point out in the record the basis for the claim.

The two specific claims of error in the instructions which were not brought to the trial court's attention relate to the charge on how Dr. Glass' testimony should be received, and to the problem of distinction between the counts in the overall charge. There was nothing approaching "plain error" as to either aspect of the charge. Appellant requested an accomplice charge as to the doctor's testimony; the doctor was not an accomplice as such, and the jury was instructed that in receiving his testimony they should consider that in making the alleged bribe payment he was violating the law. The overall charge did not permit the jury to convict for bribery under the second count. The charge as a whole placed before the jury the elements of each count and the evidence sufficiently supports the conviction on the false statement count.

The judgment is affirmed.