STATE OF CONNECTICUT *v.* ORT MORTORO

ALCORN, C. J., HOUSE, THIM, RYAN and SHAPIRO, Js.

Argued January 7—decided February 3, 1971

*Richard R. Stewart,* for the appellant (defendant).

*Edmund W. O'Brien,* state's attorney, for the appellee (state).

ALCORN, C. J.   The defendant, Ort Mortoro, was convicted by a jury of the crime of being an accessory to an attempted sale of narcotic drugs.   In this appeal from the judgment rendered on the verdict the defendant contends that the court erred in denying his motion for a separate trial, in denying his motion to set aside the verdict, in admitting evidence obtained by an electronic listening device and a tape recording, and in admitting prejudicial evidence.

We find the determinative issue in this case to be the prejudicial effect of one of the recordings which

were admitted in evidence. In view, however, of the new trial which must be ordered, we find it necessary to consider the rulings on evidence which were attacked on the ground that they violated the defendant's rights under the fourth amendment to the constitution of the United States. That question is distinct from the attack made on one recording on the ground of prejudice.

The defendant claims that the introduction in evidence of two tape recordings and the testimony of a police officer relating to conversations between the defendant and a police informer were a violation of his rights under the fourth amendment to the constitution of the United States.

The state claimed to have proved that an individual, whom we will refer to as the informer, had sold several cases of stolen liquor to the defendant in March or April, 1967. At that time, the defendant asked the informer if he knew of anyone who would be interested in acquiring a quantity of narcotics and took the informer to the home of Joseph Harb, where narcotics were displayed and the sale price was discussed. The informer told the defendant that he would get in touch with him if he found anyone interested. In August, 1967, while confined in the Montville Correctional Center, the informer sent for a county detective and told him of the narcotics which he had seen under the circumstances described.

In March, 1968, the informer telephoned to the defendant and, with the informer's consent, the call was monitored by a county detective and a tape recording of it was made. In the conversation the informer asked the defendant whether Harb still had the narcotics and the defendant said he did not know but that he would find out and asked the informer to call him the next day. On April 2, 1968,

the informer went to the defendant's place of business and at that time he had a tape recorder concealed under his coat. At this meeting there was a further conversation relative to whether Harb still had narcotics on hand.

During the trial, the county detective who had listened in on the March telephone call was permitted, over the defendant's objection, to relate the conversation which he had overheard between the informer and the defendant. Later, the defendant was asked, on cross-examination, for his version of the March telephone conversation and, to contradict his version, the tape recording of the conversation was played and a transcription of it was read to the jury over the defendant's objection. During the same cross-examination the defendant denied having any conversation with the informer regarding narcotics and the state offered the tape recording of the April 2 conversation and a transcription of it, both of which were admitted in evidence over the defendant's objection. Both recordings were offered for the purpose of attacking the defendant's credibility.

In this appeal the defendant claims that the county detective's recital of the overheard telephone conversation, the recording of that conversation, the recording of the April 2 conversation, and the transcriptions thereof were inadmissible. Thus, we are confronted with (1) the testimony by a witness for the state concerning a telephone conversation overheard with the consent of one of the parties to the conversation, (2) the admission in evidence of a recording of that conversation in order to attack the defendant's version of the conversation which he did not know was overheard, and (3) the admission in evidence of a recording of a conversation

with the defendant, made by a device carried by a consenting informer without the knowledge of the defendant and used to attack the defendant's credibility. We are satisfied that the admission of this evidence, in each instance, did not violate the defendant's fourth amendment rights.

In *On Lee* v. *United States,* 343 U.S. 747, 72 S. Ct. 967, 96 L. Ed. 1270, the Supreme Court sustained a conviction which had been attacked on fourth amendment grounds. The conviction was based on the testimony of a federal agent concerning a conversation between the accused and an undercover agent transmitted by an electronic device concealed on the person of the undercover agent to a receiving device over which the federal agent listened. The court said (pp. 753–54): "The presence of a radio set is not sufficient to suggest more than the most attenuated analogy to wiretapping. Petitioner was talking confidentially and indiscreetly with one he trusted, and he was overheard. This was due to aid from a transmitter and receiver, to be sure, but with the same effect on his privacy as if agent Lee had been eavesdropping outside an open window."

In *Lopez* v. *United States,* 373 U.S. 427, 83 S. Ct. 1381, 10 L. Ed. 2d 462, the Supreme Court upheld a conviction for attempted bribery of an internal revenue agent based on the testimony of an undercover federal agent concerning conversations which he had with the accused and the recording of one of the conversations made by a pocket wire recorder which he carried and which was introduced to corroborate his testimony. The court said (p. 438): "Once it is plain that Davis could properly testify about his conversation with Lopez, the constitutional claim relating to the recording of that conversation emerges in proper perspective."

Fourth amendment rights were again relied on in *Hoffa* v. *United States,* 385 U.S. 293, 87 S. Ct. 408, 17 L. Ed. 2d 374. In that case, however, the Supreme Court upheld a conviction for jury tampering based on the testimony of a government informer who had gained access to the accused's hotel room by deception and testified to conversations which he had overheard. The court found no fourth amendment rights violated. See also *Lee* v. *Florida,* 392 U.S. 378, 381, 88 S. Ct. 2096, 20 L. Ed. 2d 1166; *Osborn* v. *United States,* 385 U.S. 323, 87 S. Ct. 429, 17 L. Ed. 2d 394; *Lewis* v. *United States,* 385 U.S. 206, 87 S. Ct. 424, 17 L. Ed. 2d 312; *Rathbun* v. *United States,* 355 U.S. 107, 78 S. Ct. 161, 2 L. Ed. 2d 134.

On its facts, *Lopez* is directly in point as authority for the proposition that the recording of the April 2 conversation was admissible. *On Lee, Lopez* and *Hoffa* establish the principle that the fourth amendment does not protect against the risk that the party with whom a defendant converses will not repeat, transmit or record the conversation, or allow it to be recorded. Applying this principle to the present case, the monitoring and recording of the telephone conversation was permissible and the recording was admissible.

The defendant claims, in effect, that the aforementioned cases are no longer good law. In support of his position he relies mainly on the interpretation which the United States Circuit Court of Appeals for the Seventh Circuit has given in *United States* v. *White,* 405 F.2d 838, to the decision of the United States Supreme Court in *Katz* v. *United States,* 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576. The *White* case is pending on appeal to the Supreme Court (certiorari granted, 394 U.S. 957, 89 S. Ct. 1305, 22 L. Ed. 2d 559) so that we may expect, in due

course, a conclusive answer to the question with which, in the interim, we are presented by the present appeal.

In *Katz* v. *United States,* supra, the Supreme Court reversed a conviction based on evidence of the petitioner's telephone conversations which were overheard by F.B.I. agents by means of an electronic listening and recording device which they had, without the knowledge of any of the parties to the conversation, attached to the public telephone booth from which he had made his calls. In *United States* v. *White,* supra, the Seventh Circuit, by a divided court, concluded that the *Katz* decision required a holding that, in the absence of a search warrant or court authorization, eavesdropping by a federal agent on a conversation between an informer equipped with an electronic transmitter and the defendant who was unaware of the eavesdropping was a violation of the defendant's fourth amendment rights.

In *United States* v. *Kaufer,* 406 F.2d 550, aff'd, 394 U.S. 458, 89 S. Ct. 1223, 22 L. Ed. 2d 414, our own Second Circuit has reached an opposite result and expressly repudiated the interpretation of *Katz* made by the Seventh Circuit in *White.* The *Kaufer* case involved recordings of conversations by electronic devices and the use of an extension telephone. Internal revenue agents who listened in on the conversations testified about them and a tape recording of one of the conversations was admitted in evidence. The court said (p. 551): "A recording here, as distinguished from that in *Katz,* merely serves to preserve the consenting participant's recollection." Of the same tenor is *United States* v. *Polansky,* 418 F.2d 444, 447 (2d Cir.).

The Circuit Court of Appeals for the Fourth

Circuit has also disagreed with the *White* decision in *United States* v. *DeVore,* 423 F.2d 1069, saying (p. 1074) : "Since the participants in a conversation are privileged to tell what was said, it necessarily must follow that a recording of what was said may either be used to corroborate the revelation, or simply as a more accute [sic] means of disclosure." See also *United States* v. *Jones,* 433 F.2d 1176 (D.C. Cir.), *Holt* v. *United States,* 404 F.2d 914, 919 (10th Cir.), and *Dancy* v. *United States,* 390 F.2d 370, 371 (5th Cir.), all of which interpret *Katz* v. *United States* as not, sub silentio, overruling *On Lee, Lopez* and *Hoffa.*

The majority opinion in *Katz* v. *United States* does not expressly overrule any of the earlier decisions to which we have just made reference. On the contrary, Mr. Justice White, in his concurring opinion states (n.363) specifically that *On Lee, Lopez, Osborn* and *Hoffa* "are undisturbed by today's decision."

Undeniably, the court has painted with a broad brush in *Katz* in treating conversation as a subject of search and seizure protected by the fourth amendment whenever a person justifiably expects his conversation to be private. On its face, the language of the court could be read to embrace a situation like the present. On closer examination, however, *Katz* involved a surreptitious eavesdropping on a conversation without the knowledge or consent of either of the speakers. It did not involve, as in the earlier cases referred to, the accurate recording of a conversation with the consent of one of the speakers. We consider that *Katz* holds that the person who made calls from the telephone booth had a reasonable expectation of not being overheard by third persons who would intercept his call unknown to him or to

the recipient of his call. When a person has a conversation with another person, he relinquishes his right of privacy with respect to that person, and although he may complain of a breach of privacy by an eavesdropper, he cannot complain of a breach of trust by the person with whom he converses. See *United States* v. *DeVore,* supra, 1074. Whether in a face-to-face encounter or by telephonic communication, the person to whom he is speaking is free to relate the conversation provided, of course, that it is not a privileged communication. This fact is recognized in the earlier cases such as *On Lee, Lopez* and *Hoffa.* Quoting again from the concurring opinion of Mr. Justice White in *Katz,* supra: "When one man speaks to another he takes all the risks ordinarily inherent in so doing, including the risk that the man to whom he speaks will make public what he has heard. The Fourth Amendment does not protect against unreliable (or law-abiding) associates. *Hoffa* v. *United States,* . . . [385 U.S. 293, 87 S. Ct. 408, 17 L. Ed. 2d 374]. It is but a logical and reasonable extension of this principle that a man take the risk that his hearer, free to memorize what he hears for later verbatim repetitions, is instead recording it or transmitting it to another."

We conclude that there was no violation of fourth amendment rights in admitting the evidence objected to. The defendant adds the claim that the monitoring of the telephone call violated the Federal Communications Act of 1934. 48 Stat. 1103, 47 U.S.C. § 605. That act as amended in 1968 is not applicable to the facts of this case. Moreover, the Omnibus Crime and Safe Streets Act of 1961, 82 Stat. 214, 18 U.S.C. § 2511 (2) (c), specifically authorizes such eavesdropping.

We turn then to the defendant's claim that one of the tape recordings was inadmissible because it was immaterial, irrelevant and fatally prejudicial. It should be noted at the outset that, so far as this appeal record discloses, the trial judge was never afforded an opportunity to know in advance the substance of the recording or to pass upon the question which is now raised. Consequently, we are not, in this instance, reviewing any action of the trial court on the grounds to be discussed. In his testimony the defendant had denied having had any discussion with the informer concerning narcotics. The recording of the April 2 conversation which we have described was offered in evidence on cross-examination of the defendant as already stated for the purpose of affecting his credibility on this point. When the recording was offered, the court inquired whether it was offered in contradiction of the defendant's testimony and the state replied that it was. The defendant objected, without stating any ground for his objection. The objection was overruled and the recording was marked as an exhibit, after which it was played. A transcription made of its contents was included in the exhibit. The state does not raise any objection that the technical requirements of our rules of practice were not observed, but seeks to sustain the admission of the evidence on the ground that, at this point in the case, the discrepancy between the defendant's testimony and that of the police informer was critical and that the evidence was relevant and material to show that the defendant did not "truthfully or accurately describe his conversation" with the informer on April 2, the circumstances of which we have described. A review of the content of the recording leads us to the conclusion that justice requires our

consideration of the relevancy, materiality and prejudicial nature of the material thus laid before the jury.

The transcription of the recording covers sixteen pages of the appendix to the defendant's brief, only four pages of which have any reference whatever to the subject of narcotics. The conversation commenced with the informer's statement that he had just been released on bail on a charge of receiving stolen goods but that his lawyer had said that he was going to get the evidence suppressed because of an alleged illegal search and seizure. The conversation then turned to the defendant's report of a crime in which two "[g]uys from out of town" took $3100 from a business concern. The conversation then continues for eight pages of the appendix to the brief with the defendant's description of a man who was in the habit of carrying large sums of money and the fact that he had seen this man "flash a roll of $100 bills" amounting to $5800 to $6000 "the other day". The defendant then described to the informer in detail how the informer could follow the man to his home at night and hold him up with a weapon and that he, the defendant, had "a Magnum 357" which he would loan to the informer for the holdup if the latter would return it promptly. The defendant offered to point out the victim's house to the informer and stated that the holdup could be accomplished on any night but that the quicker the informer did it the better because the proposed victim was carrying the money now. The defendant described the best method of entering the house and the proper locale in the house to accomplish the holdup. Other details, including the defendant's share of the proceeds, the informer's use of a rented car, and the defendant's suggestion that

the informer "[g]rab a couple of plates somewhere and put one on the front and one on the back" and then restore the owner's plates when the car was turned in.

It was after the foregoing discussion that the informer recalled "what else he was going to say" and then followed a discussion about the narcotics which Harb might have. The informer described the type of narcotics he wanted. The defendant stated he did not know what Harb still had but arranged to have the informer call him the next morning at 9:30 and, in the meantime, the defendant would "find out what he's got". This conversation was interrupted briefly by the defendant stating that he needed two portable, black and white, television sets.

It is unnecessary to discuss the obscenities with which the defendant's part of the conversation was garnished. It is sufficient to say that three-quarters of the conversation which was laid before the jury concerned the fact that the defendant was engaged in proposing and planning an armed holdup, describing the procedure and furnishing the weapon with which the crime was to be committed. That crime itself had nothing whatever to do with the charge of being an accessory to an attempted sale of narcotics for which the defendant was on trial. The evidence was offered, not to impeach the defendant's credibility by showing that he was a person of bad character, which the evidence would certainly serve to indicate, but it was offered to impeach his credibility by directly contradicting his testimony that he had never had the conversation of April 2 concerning narcotics with the informer. Nor did three-fourths of the conversation deal with any evidence of a prior conviction of crime.

The portion of the recording relevant and material to the crime for which the defendant was on trial was that relating to his participation in a sale of narcotics. Clearly enough that portion of the conversation was material, relevant and admissible to contradict the defendant's testimony that he had never had the April 2 conversation with the informer concerning narcotics. To accomplish the purpose of contradiction, it would have been quite sufficient for the state to have offered only the portion of the recording relating to the conversation concerning narcotics. It is clear that the remaining portion of the conversation was highly prejudicial to the defendant and cannot be said to have had the probative value for which it was offered since the recording was offered only to discredit the defendant's denial of a conversation concerning narcotics.

It is well established that, as a general rule, evidence of the commission of other crimes unconnected with the crime for which a defendant is on trial is inadmissible. *State* v. *Holliday,* 159 Conn. 169, 172, 268 A.2d 368; *State* v. *Harris,* 147 Conn. 589, 599, 164 A.2d 399; *State* v. *Barnes,* 132 Conn. 370, 372, 44 A.2d 708. It is equally well settled that the mere fact that "evidence tends to prove the commission of other crimes by the accused does not render it inadmissible if it is otherwise relevant and material". *State* v. *Simborski,* 120 Conn. 624, 631, 182 A. 221. In fact, there are many exceptions to the general rule that evidence of other crimes is inadmissible. See *State* v. *Holliday,* supra, and cases cited. One recognized exception is that evidence of prior convictions may be used to impeach the defendant's credibility as a witness when he takes the stand in his own defense. General Statutes § 52-145; *State* v. *Marquez,* 160 Conn. 47, 48, 273 A.2d 689.

Even if it were to be assumed that the evidence offered was admissible under an exception to the general rule, nevertheless, when evidence of other crimes is offered for some proper purpose, the question of whether its prejudicial value outweighs its probative value becomes a material consideration. *State* v. *Marquez,* supra, 52; *State* v. *Holliday,* supra, 173. For the reasons already indicated, the probative value of that portion of the recording which we have described was unquestionably far outweighed by its prejudicial effect. The prejudicial effect of that portion of that recording requires that we order a new trial, although, even disregarding the improperly admitted evidence, there was sufficient evidence to support the verdict.

On the view which we take of the case, it is unnecessary to discuss the other assignment of error. It appears from the record that during the course of the defendant's trial the defendant Joseph Harb, who was on trial in the companion case, pleaded guilty. Consequently, in a retrial of this case the question of severance would not arise.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.