STATE OF CONNECTICUT *v.* BENJAMIN CARR, JR.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued November 9, 1976—decision released March 1, 1977

*John R. Williams,* for the appellant (defendant).

*William F. Gallagher,* special assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *John J. Kelly,* assistant state's attorney, for the appellee (state).

BARBER, J. The state charged that the defendant did offer, confer and agree to confer benefits upon a public servant, in the form of the payment of sums of money, as consideration for a police officer's exercise of discretion as a public servant, in violation of § 53a-147 of the General Statutes.[1] A jury

---

[1] "[General Statutes] Sec. 53a-147. BRIBERY: CLASS D FELONY. (a) A person is guilty of bribery if he offers, confers or agrees to confer upon a public servant any benefit as consideration for the recipient's decision, opinion, recommendation, vote or other exercise of discretion as a public servant. (b) Bribery is a class D felony."

found the defendant guilty and he has appealed from the judgment rendered on the verdict. The defendant in his preliminary statement includes fourteen issues intended to be presented on appeal. He has, however, pursued in his brief only eight claims of error, and one of those was abandoned in oral argument.

The remaining seven claims are that the court erred (1) in admitting portions of a tape recording claimed to have no relevance to the crime charged; (2) in refusing to instruct the jury that § 29-9 is a lesser included offense of § 53a-147 as charged in the information; (3) in denying the defendant's motion for a directed verdict and motion to set aside the verdict upon the defendant's claim that the state could not prosecute the defendant under § 53a-147; (4) in quashing a defense subpoena directed to the president of the New Haven board of police commissioners; (5) in overruling the defendant's objections to portions of the closing argument made to the jury by the assistant state's attorney; (6) in denying the defendant the assistance of counsel during the early stages of the case; (7) and in refusing to allow the defendant the right of allocution when sentence was imposed.

The defendant's brief does not contain the statement of facts required by the provisions of § 631A (b) of the Practice Book. Essential facts do, however, appear in narrative form in the state's brief, which facts are supported by appropriate references to the page or pages of the transcript upon which the state relies. The following constitutes a sufficient background summary: On June 19, 1972, Detective Eugene Lovette, Jr., a member of the New Haven police department's gambling and narcotics division, was approached by the defendant

outside a supermarket in downtown New Haven, and the defendant requested Detective Lovette to refrain from vigorously pursuing his narcotics investigations, in return for which the defendant promised to remunerate Detective Lovette. The following day, Detective Lovette informed his immediate superior of the conversation with the defendant. Subsequently, on June 27, 1972, the defendant arranged to meet with Detective Lovette. At this meeting, which took place the following day on Crescent Street in New Haven, the defendant gave Detective Lovette $36 in return for the officer's agreement to curtail his narcotics investigation, and also informed Lovette that he could make $200 per week in return for his cooperation with the defendant. A further meeting was arranged at the municipal golf course. At this meeting, which took place on June 29, 1972, Lovette had a microphone on his person to record the conversation with the defendant. The defendant handed Lovette $200 at this meeting, and informed him that he could make $10,000 a year should he cooperate. On July 10, 12, 20 and 26, 1972, the defendant met with Lovette and a further sum of money was paid in return for that officer's agreement to curtail his narcotics investigations and to advise the defendant of any impending action. At each meeting, Lovette had a microphone on his person and recordings were made of his conversations with the defendant. Finally, on July 31, 1972, the defendant was arrested, pursuant to a Superior Court bench warrant, while he was meeting again with Lovette.

## I

The defendant's first claim of error pertains to the playing to the jury of the entire tape recordings of the conversations which took place during the

meetings between the defendant and Detective Lovette. The defendant has identified two aspects of the taped conversations admitted into evidence which are claimed as irrelevant and prejudicial. One aspect concerns the references in the conversations relating to possible moral offenses on the part of the defendant, and the other aspect concerns evidence in the tape recordings linking the defendant to the narcotics traffic in New Haven. The defendant relied on the case of *State* v. *Mortoro,* 160 Conn. 378, 279 A.2d 546, in claiming that those portions of the recordings should have been excised before playing them to the jury. In *Mortoro,* the defendant was charged with being an accessory to an attempted sale of a narcotic drug and we held that the probative value of certain portions of the recordings played to the jury was outweighed by their prejudicial effect. The opinion states (p. 389): "It is unnecessary to discuss the obscenities with which the defendant's part of the conversation was garnished. It is sufficient to say that three-quarters of the conversation which was laid before the jury concerned the fact that the defendant was engaged in proposing and planning an armed holdup, describing the procedure and furnishing the weapon with which the crime was to be committed. That crime itself had nothing whatever to do with the charge . . . for which the defendant was on trial."

It is true that in this case the recorded conversations tended to be in street vernacular and were interlarded with obscenities including some allusions to the sexual proclivities of the defendant. The facts of the case, however, are distinguishable from those in *Mortoro,* and the court did not err in admitting the entire recorded conversations. The obscenities and sexual references did not reasonably

suggest any distinguishable crime other than the one charged and were interwoven in the conversations to the extent that the court was justified in finding that it would have been damaging to the continuity of the tapes to excise those relatively minor portions. See *People* v. *Mitchell,* 40 App. Div. 2d 117, 338 N.Y.S.2d 313. The court was also justified in not deleting the evidence in the recordings concerning the defendant's connection with illegal narcotics traffic. It is well established that, as a general rule, evidence of the commission of other crimes unconnected with the crime for which a defendant is on trial is inadmissible. *State* v. *Holliday,* 159 Conn. 169, 172, 268 A.2d 368; *State* v. *Harris,* 147 Conn. 589, 599, 164 A.2d 399. In *State* v. *Mortoro,* supra, this rule led to the exclusion of the evidence of a planned armed holdup by the defendant which was completely unrelated to the narcotics offense with which he was charged. We went on to state, however, that "[i]t is equally well settled that the mere fact that 'evidence tends to prove the commission of other crimes by the accused does not render it inadmissible if it is otherwise relevant and material.'" *State* v. *Mortoro,* supra, 390; *State* v. *Ralls,* 167 Conn. 408, 417, 356 A.2d 147; *State* v. *Marshall,* 166 Conn. 593, 353 A.2d 756. In the present case, the conversations associating the defendant to the narcotics traffic in New Haven were not immaterial or logically unrelated to the bribery offense charged. *State* v. *Jenkins,* 158 Conn. 149, 152, 256 A.2d 223. This evidence was relevant and admissible for the purpose of showing the corrupt intent and motive behind the defendant's attempts to bribe Detective Lovette not to interfere with the defendant's illicit narcotics operation. *State* v. *Jenkins,* supra, 152–53. It formed an inte-

gral part of the conversations in which the defend-
ant referred to or offered the bribes or discussed
matters incidental to the bribery. See *People* v.
*Mitchell,* supra. Furthermore, when entrapment is
interposed as a defense, as it was in this case, the
predisposition and criminal design of the defendant
become relevant, and evidence may be adduced by
either side tending to show the defendant's state of
mind. *Sherman* v. *United States,* 356 U.S. 369, 373,
78 S. Ct. 819, 2 L. Ed. 2d 848; *State* v. *Whitney,* 157
Conn. 133, 137, 249 A.2d 238; annot., 33 A.L.R.2d
883, 908, § 6. Under such circumstances, all of the
conversation between the detective and the defend-
ant increased in relevance. The admissibility of
this evidence was, therefore, within the judicial
discretion of the trial court.

The court has a wide discretion in its rulings on
the relevancy of evidence; *State* v. *Saia,* 167 Conn.
286, 291, 355 A.2d 88; *State* v. *Carnegie,* 158 Conn.
264, 273, 259 A.2d 628, cert. denied, 396 U.S. 992,
90 S. Ct. 488, 24 L. Ed. 2d 455; and in determining
whether the probative value of the evidence out-
weighs its prejudicial tendency. *State* v. *Ralls,*
supra; *State* v. *Moynahan,* 164 Conn. 560, 597, 325
A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291,
38 L. Ed. 2d 219. "In determining whether there
has been an abuse of discretion, every reasonable
presumption should be given in favor of the cor-
rectness of the court's ruling. *DiPalma* v. *Wiesen,*
163 Conn. 293, 298, 303 A.2d 709. Reversal is
required only where an abuse of discretion is mani-
fest or where injustice appears to have been done.
*Thomas* v. *Thomas,* 159 Conn. 477, 480, 271 A.2d
62; 1 Wharton, Criminal Evidence (13th Ed.) § 241.
In balancing the grounds advanced by the state for
the admission of the evidence against the grounds

advanced by the defendant for excluding it, we cannot say that as a matter of law the court abused its discretion in allowing . . . [the evidence to be introduced]." *State v. Brown,* 169 Conn. 692, 702, 364 A.2d 186.

## II

The defendant's second claim of error is that the court erred in refusing to instruct the jury that § 29-9[2] is a lesser included offense of § 53a-147 as charged in the information.[3] "The test for determining whether one violation is a lesser included offense in another violation is whether it is possible

[2] "[General Statutes] Sec. 29-9. ACCEPTANCE OR OFFERING OF GIFTS OR REWARDS BY OR TO STATE OR LOCAL POLICE. (a) Any state police officer appointed as provided in section 29-4, any police officer of any city, town or borough and any person having the power of arrest who, directly or indirectly, receives a reward, gift or gratuity for the purpose of influencing his behavior in office, or any person who gives, offers or promises to a police officer or any person having the power of arrest any reward, gift or gratuity with the intent to influence his behavior in office, shall be fined not more than one hundred dollars or imprisoned not more than six months or both, and the police officer shall be dishonorably discharged from the police department. (b) The provisions of subsection (a) shall not apply to rewards, gifts or gratuities which are approved by the state police commissioner, or the police chief or board of police commissioners, as the case may be, and are given to the police officer on account of his official services."

[3] "[Information] State's Attorney for the County of New Haven accuses Benjamin Carr, Jr., also known as "Ben," also known as "Fat Daddy" of BRIBERY and charges that at the Town or City of New Haven, County of New Haven, State of Connecticut from on or about June 19, 1972, through on or about the 28th day of July, 1972, the said Benjamin Carr, Jr., also known as "Ben," also known as "Fat Daddy" did offer, confer and agree to confer upon a public servant, to wit: Eugene L. Lovette, Jr., a member of the City of New Haven's Police Department, benefits, to wit: the payment of sums of money, as consideration for said officer's exercise of discretion as a public servant, to wit: to not arrest or interfere with Carr's illicit narcotics operation, his (Carr's) associates and/or to warn of impending police action relating to said Carr, his narcotics business and/or his associates in the same, in violation of Section 53a-147 of the Penal Code."

to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser. If it is possible, then the lesser violation is not an included crime. See *United States* v. *McCue,* 160 F. Sup. 595, 599 (D. Conn.). In other words, to require an instruction on a lesser included offense, the lesser offense must not require any element which is not needed to commit the greater offense, in the manner alleged in the information or the bill of particulars." *State* v. *Brown,* 163 Conn. 52, 61-62, 301 A.2d 547; *State* v. *Blyden,* 165 Conn. 522, 529–30, 338 A.2d 484; *State* v. *Ruiz,* 171 Conn. 264, 272, 368 A.2d 222; see Barnett, "The Lesser-Included Offense Doctrine: A Present Day Analysis for Practitioners," 5 Conn. L. Rev. 255.

Section 53a-147 became effective with the penal code on October 1, 1971. Unlike its predecessor, § 53-147, it does not require proof of a specific intent to influence official behavior. The essential elements that constitute the offense of bribery as stated in § 53a-147 are: (1) offering, conferring, or agreeing to confer a benefit (2) upon a public servant (3) as consideration for the recipient's decision, opinion, recommendation, vote or other exercise of discretion as a public servant. The essential elements constituting the offense of offering a gratuity as stated in § 29-9 are: (1) giving, offering or promising (2) to a police officer (3) any reward, gift or gratuity, (4) *with the intent to influence* his behavior in office. This statutory differentiation between the offenses of bribery and the offering or giving of a gratuity is the opposite of, for example, federal[4]

---

[4] 18 U.S.C. §§ 201 (b) (1) and (2) require proof of a specific intent to influence for bribery, whereas 18 U.S.C. § 201 (f) does not require proof of this element for a conviction of offering or giving a gratuity.

and New York[5] law which require a heavier burden of proof for bribery, and in which the offense of giving a gratuity was designed primarily to apply to situations where payment is not made until after official action is taken and the element of a corrupt bargain is absent or unprovable. See *United States v. Harary*, 457 F.2d 471, 476 n.11 (2d Cir.); *People v. LaPietra*, 64 Misc. 2d 807, 316 N.Y.S.2d 289. Under Connecticut law, nevertheless, the offense of offering a gratuity as stated in § 29-9 requires an element of proof, specific intent, which is not needed to prove the greater offense of bribery stated in § 53a-147. Accordingly, the trial court did not err in refusing to charge that § 29-9 is a lesser included offense of § 53a-147 as charged in the information. We find no merit to the defendant's alternative claim that it was unfair to charge the defendant with § 53a-147 rather than § 29-9. See *United States v. Librach*, 520 F.2d 550 (8th Cir.); *United States v. Eisenmann*, 396 F.2d 565, 568 (2d Cir.); *State v. Daley*, 147 Conn. 506, 508, 163 A.2d 112, cert. denied, 364 U.S. 887, 81 S. Ct. 178, 5 L. Ed. 2d 107.

## III

The defendant moved for a directed verdict and, subsequently, to set aside the verdict, which motions the court denied. The defendant's ground for them was that he was improperly charged with a violation of § 53a-147 because this statute speaks in terms of offering a bribe for the public servant's "exercise of discretion," whereas a police officer is obligated to follow rules and orders and has no discretion in fulfilling his duties. The defendant

---

[5] N.Y. Penal Law §§ 200.00 and 200.04 (McKinney) require proof of an agreement or understanding that the public servant will be influenced for a conviction of bribery, whereas § 200.30 does not require this element for a conviction of giving unlawful gratuities.

does not claim that a police officer is not a "public servant" within the terms of the statute. See General Statutes § 53a-146 (3). He only claims that a police officer has no decision-making powers involving discretion.

Section 53a-147, a part of our penal code, covers the crime of bribery in broad terms and is not limited to the administration of justice and attempts to influence legislation. 27A Connecticut General Statutes, Annotated (West Ed.), p. 455, comment. Generally, "discretion" is simply individual choice or judgment. Webster's Third New International Dictionary. Although it may be true that a police officer's fulfillment of his duty is regulated by rules and orders, this does not mean that one can pay a price for action on the part of a police officer in his capacity as a public servant and that this cannot constitute bribery. It is immaterial and no defense that the police officer had no authority to take the action desired by the bribe given. The offense of bribery may be committed although the officer in question does not have the authority to do or refrain from doing the act to which the bribe relates, as long as the officer purported to act in his official capacity. 12 Am. Jur. 2d, Bribery, § 13; 3 Wharton, Criminal Law and Procedure (Anderson) § 1389; annot., 73 A.L.R.3d 374. In construing a bribery statute which, like § 53a-147, did not refer to the public servant's jurisdiction, the New York Court of Appeals stated that the statute would be construed broadly in order to effect the purpose of the law which was to prevent corruption in the public service: "[T]he statute against bribery does not refer directly to jurisdiction, and official action means such as properly belongs to the office even if the right to perform it did not exist in the par-

ticular case." *People* v. *Chapman,* 13 N.Y.2d 97, 101, 192 N.E.2d 160. Moreover, in the present case, the state asserted that the payments were consideration for the police officer's exercise of discretion as a public servant "to not arrest or interfere with Carr's illicit narcotics operation." Certainly there were various methods, not affirmatively controlled by specific police rules, in which Detective Lovette could exercise his discretion or judgment in refraining from "interfering" with the defendant's narcotics operations. We conclude that the defendant was not improperly charged with a violation of § 53a-147 of the General Statutes.

## IV

The defendant claims that the court erred in quashing a defense subpoena directed to the president of the New Haven board of police commissioners, Luca Celentano. The defendant sought Celentano's testimony with respect to the duties of police officers for the purpose of attacking the state's claim that Detective Lovette had the opportunity to perform or omit a discretionary act in exchange for the defendant's payments. In view of our conclusion that it is immaterial and no defense that the police officer did not have the authority to take the action which the bribe-giver desired him to take, the action of the trial court in quashing the defense subpoena cannot be considered harmful error in any event.

## V

During the argument to the jury by the assistant state's attorney, the defendant objected to comments on the veracity and reputation of the police officer by whom the defendant claimed to have been entrapped. The only grounds of objection were that the comments were not correct statements

and that the defendant thought that they constituted improper summation. The defendant took no formal exceptions but asked that the jury be told to disregard them. See *State* v. *Malley,* 167 Conn. 379, 387, 355 A.2d 292. The comments to which the defendant objected concern statements suggesting that if the jury did not believe Detective Lovette they would be deciding that the police officer was a liar, and further suggesting that a not guilty verdict would ruin the reputation of the police officer because the defendant had intimated that the officer's testimony was motivated by his desire for promotion.

We agree that a prosecutor should avoid arguments which are calculated to influence the passions or prejudices of the jury, or which would have the effect of diverting the jury's attention from their duty to decide the case on the evidence. ABA, Standards Relating to the Prosecution Function and the Defense Function (1971) § 5.8. This does not mean that a prosecutor may not present arguments with logical force and vigor. See *Berger* v. *United States,* 295 U.S. 78, 88, 55 S. Ct. 629, 79 L. Ed. 1314. "To attempt to spell out in detail what can and cannot be said in argument is impossible, since it will depend largely on the facts of the particular case." ABA, Standards, op. cit. § 5.8, commentary. In this case, the defendant claimed that he was entrapped and that the police officer, whose veracity was questioned by him, was motivated by his desire for promotion. We are not convinced that the comments were not provoked or that they were "flagrantly improper." *State* v. *Frost,* 105 Conn. 326, 338, 135 A. 446; see *Patriarca* v. *United States,* 402 F.2d 314, 318 (1st Cir.). The defendant has not established that the claimed error was harmful. *State* v.

*L'Heureux,* 166 Conn. 312, 323, 348 A.2d 578. Furthermore, the evidence of the defendant's guilt was so overwhelming that the error, if any, was harmless, and we cannot find any possibility of prejudice. See *State* v. *Rado,* 172 Conn. 74, 86, 372 A.2d 159; *State* v. *Williams,* 170 Conn. 618, 636, 368 A.2d 140; *Patriarca* v. *United States,* supra, 322.

## VI

The defendant assigns error, claiming that he was denied assistance of counsel at a critical stage of the case. The defendant was arrested upon a bench warrant issued by a judge of the Superior Court. The finding and order on the application for the bench warrant fixed the bond at $50,000. The morning following the defendant's arrest his counsel appeared in court, stating that he had filed a motion for reduction in the amount of the bond. The motion was not heard that day and counsel was advised that it would be placed on the regular motion docket. It does not appear that the defendant was in court at this time. The next day the defendant filed a motion to dismiss, alleging, among other things, that the bond had been fixed in a secret ex parte hearing in chambers and that he had been denied the right to counsel at a critical stage of the proceedings. The court denied the motion.

Section 54-43 of the General Statutes provides that "[u]pon the representation of any state's attorney that he has reasonable ground to believe that a crime has been committed within his jurisdiction, the superior court or . . . any judge thereof . . . may issue a bench warrant for the arrest of the person or persons complained against, and in such case shall . . . fix a bond for the appearance of such person or persons in such amount as to said

court or to such judge appears reasonable." This statute clearly contemplates an ex parte hearing, and it is not reasonable to expect that counsel for an accused be present when the arrest warrant is issued and the bond fixed. Moreover, the defendant does not claim that anything took place at the time that bond was fixed which was likely to impair his right to a fair and impartial trial. The defendant's argument admits that he was represented by counsel the morning after his arrest. What occurred subsequently cannot be blamed on absence of counsel. By no stretch of the imagination can the fixing of bond on the issuance of the bench warrant, in the absence of the defendant, be considered a "critical stage" of the trial requiring the presence of counsel, within the teachings of *White* v. *Maryland,* 373 U.S. 59, 83 S. Ct. 1050, 10 L. Ed. 2d 193, and *Hamilton* v. *Alabama,* 368 U.S. 52, 82 S. Ct. 157, 7 L. Ed. 2d 114. Before issuing the bench warrant and fixing a bond, the court must be satisfied that the state's attorney has "reasonable ground" to believe that a crime has been committed within his jurisdiction by the person complained against. General Statutes § 54-43. Speaking of a similar proceeding occurring after a warrantless arrest, the United States Supreme Court has recently said: "Because of its limited function and its nonadversary character, the probable cause determination is not a 'critical stage' in the prosecution that would require appointed counsel. The Court has identified as 'critical stages' those pretrial procedures that would impair defense on the merits if the accused is required to proceed without counsel. *Coleman* v. *Alabama,* 399 U.S. 1 (1970); *United States* v. *Wade,* 388 U.S. 218, 226–227 (1967)." *Gerstein* v. *Pugh,* 420 U.S. 103, 122, 95 S. Ct. 854, 43 L. Ed. 2d 54. Only when pretrial events transpired that are likely

to prejudice the ensuing trial is an accused entitled to the assistance of counsel. Such right must be determined both from the nature of the proceedings and from what actually transpired. *Cooper* v. *Reincke,* 333 F.2d 608 (2d Cir.), cert. denied, 379 U.S. 909, 85 S. Ct. 205, 13 L. Ed. 2d 181; *DeToro* v. *Pepersack,* 332 F.2d 341 (4th Cir.), cert. denied, 379 U.S. 909, 85 S. Ct. 198, 13 L. Ed. 2d 181; see *State* v. *Taborsky,* 147 Conn. 194, 202, 158 A.2d 239; *State* v. *Reid,* 146 Conn. 227, 235, 149 A.2d 698; annot., 5 A.L.R.3d 1269. In this case the ex parte fixing of bond on the issuance of the bench warrant was not a critical stage of the trial requiring the presence of counsel for the accused.

## VII

We consider finally the defendant's claim that he was denied a right of allocution in that the court refused to allow him to address the court personally before sentence was imposed. At common law, the defendant in a felony case had a right called "allocution" to be asked formally whether he had any reason to offer why judgment should not be awarded against him. Note, "Due Process in Sentencing," 81 Harv. L. Rev. 821, 832. To place this right in its correct historical perspective, it must be considered that under the ancient English common law a person on trial for a felony was not allowed counsel and was not a competent witness in his own behalf. Annot., 96 A.L.R.2d 1292, 1295 § 3. The presiding judge theoretically was his counsel but did not represent the accused in the sense of a modern day advocate. If the judge omitted anything which was the right or privilege of the accused, it was considered the act of the court, which could not prejudice the prisoner. *State* v. *Hoyt,* 47 Conn. 518, 543–44. Moreover, because the common-law judge

generally had no discretion as to the amount of punishment in felony cases, which was usually a capital sentence, the purpose of the judge's question, or allocution, was not to seek mitigating evidence or a plea for leniency, but rather to give the defendant a formal opportunity to show one of the strictly defined legal grounds for avoidance or delay of the sentence: he was not the person convicted, he had benefit of clergy or pardon, he was insane, or if a woman, she was pregnant. See note, 81 Harv. L. Rev., op. cit.; Barrett, "Allocution," 9 Mo. L. Rev. 115. In many American jurisdictions, the practice of allocution has been codified in statutes or court rules, "but except where this has been done it is apparent that the tendency is to regard the practice as a technical formality of little importance in modern criminal procedure, where other procedural devices afford the accused ample opportunity to protect himself at all stages of the proceeding." Annot., 96 A.L.R.2d 1292, 1295 § 3. Even in capital cases the rule requiring allocution "has been largely emasculated by the holdings that the failure to afford the accused an opportunity to speak merits reversal only where prejudicial error results." Id., p. 1296. Furthermore, even where omission of allocution is held to be reversible error, a reversal should apply to the sentence only and relief is limited to a remand for reimposition of sentence after allocution has first been offered. *State* v. *Hoyt,* supra; 21 Am. Jur. 2d, Criminal Law, § 530. In spite of the fact that rule 32 (a) of the Federal Rules of Criminal Procedure requires that the defendant be given an opportunity to speak in his own behalf before sentencing, the United States Supreme Court has held that the failure of the sentencing judge to ask a defendant represented by counsel whether he personally had anything to say

was not "an omission inconsistent with the rudimentary demands of fair procedure" and was not an error of constitutional dimensions. *Hill* v. *United States,* 368 U.S. 424, 428, 82 S. Ct. 468, 7 L. Ed. 2d 417. The United States Supreme Court in *Hill* did not decide, and it has never directly determined, whether the sentencing of a defendant who wished to speak would rise to the level of a constitutional question. Id., p. 429; see *McGautha* v. *California,* 402 U.S. 183, 218 n.22, 91 S. Ct. 1454, 28 L. Ed. 2d 711. Although our state constitution, article first, § 8, provides that an "accused shall have a right to be heard by himself and by counsel," we have never precisely construed this provision. Similar provisions in other states have not been construed to entitle an accused as a matter of right to be heard by both himself and by counsel. *People* v. *Linden,* 52 Cal. 2d 1, 17, 338 P.2d 397 (holding that the constitutional right to "appear and defend, in person and with counsel" was not "conjunctive"); 21 Am. Jur. 2d, Criminal Law, § 311; annot., 77 A.L.R.2d 1233, 1241 § 4; see also *People* v. *Richardson,* 4 N.Y.2d 224, 149 N.E.2d 875, cert. denied, 357 U.S. 943, 78 S. Ct. 1395, 2 L. Ed. 2d 1557 (denying an accused the right to address the jury when represented by counsel). It is noted that this constitutional issue was neither raised at the trial level nor briefed on appeal.

On the facts of the case before us, we are not persuaded that the defendant has shown either that the trial court erred or denied him due process. "In this state as to all crimes below that of murder the common law rule [of allocution] has never been observed in practice. . . . The only purpose of making the inquiry is, that the prisoner may know that the verdict does not conclude him; that he may

do something or say something to arrest the judgment. If he actually did move in arrest of judgment it is surely enough." *State* v. *Hoyt,* 47 Conn. 518, 545. The defendant in this case did move in arrest of judgment and also moved to set aside the "verdict and judgment." He was represented by experienced counsel throughout the proceedings who was apparently quite thorough in advancing arguments for the defendant at the time of sentencing. Neither at the time of sentencing nor in his brief on appeal did the defendant attempt to make a showing of prejudice from not having been allowed to address the court personally. There is no indication of what the defendant could or would have said, beyond the presentation of his counsel, had he been allowed to speak. See *State* v. *Cerce,* 46 N.J. 387, 392, 217 A.2d 319. We can find no support for the defendant's claim that "the judge knew the defendant had something to say which had not previously been said." No evidence whatsoever is offered to substantiate this claim. Rather, it appears that the judge was justified in thinking that the defendant's request to speak would serve no relevant purpose in this case and would only lead to delay, particularly since there was a presentence report and the defendant's counsel had already spoken on his behalf. See *Lunz* v. *Henderson,* 533 F.2d 1322 (2d Cir.). The defendant was able to participate meaningfully in the sentencing process in this case, and it appears that the only significant purpose of allocution under these circumstances would be its "therapeutic effect." ABA, Standards Relating to Sentencing Alternatives and Procedures (1968) § 5.4 (c), p. 255. Although this purpose alone may well be a commendable one for allowing a defendant to address the court, provided his remarks are pertinent and not repetitive of what his attorney has

said,[6] in this case the court did not err in refusing the defendant a right to speak before being sentenced.

There is no error.

In this opinion HOUSE, C. J., LOISELLE and LONGO, Js., concurred.

BOGDANSKI, J. (concurring in part and dissenting in part ). I agree to no error in the conviction of the defendant, but cannot agree that there was no error in the sentencing proceeding.

The defendant received the maximum penalty for the offense of which he was convicted. Immediately before sentence was imposed, the defendant requested "an opportunity to address your Honor before your Honor imposes sentence." The court replied: "Well, I don't think it's going to serve any purpose. I am not going to allow him to do it. I have made up my mind. Nothing he is going to say is going to change the sentence; the only thing he is going to do is make me feel bad about what I'm going to do. I don't feel bad about it now. I don't want to listen to him ask for mercy, because, to tell you the truth, I'm not in the mood to give him any mercy today. What else can he say but give him some kind of a break, so I am just going to go forward with the sentence." The defendant duly excepted to the ruling of the court.

Section 8 of article first of the Connecticut constitution enacted in 1965 provides in part: "In all

---

[6] Section 2330 (2) of the Connecticut Practice Book, effective October 1, 1976, now provides that in conducting a sentencing hearing in a criminal case "[t]he judicial authority shall allow the defendant a reasonable opportunity to make a personal statement in his own behalf and to present any information in mitigation of the sentence."

criminal prosecutions, the accused shall have a right to be heard by himself and by counsel." That same provision has been in our state constitution since 1818.

In the present case, the sentencing judge made it clear that his reason for refusing to hear the defendant was an unwillingness to consider any argument the defendant might make regarding sentencing. In fact, the judge specifically stated that he feared that comments by the defendant might affect him and for that reason he did not wish to hear them.

It should be noted that the defendant did not seek to participate in the trial, nor did he seek dual representation. He simply asked to be heard before sentence was imposed after the trial was over. In the circumstances of this case, the refusal by the court to permit the defendant to be heard constituted a violation of a fundamental constitutional right.

I would find error in part and remand for resentencing.